289 N.J. Super. 181 (1996)
673 A.2d 300
VILLAGE OF RIDGEWOOD, PLAINTIFF-RESPONDENT,
v.
SHELL OIL COMPANY, A DELAWARE CORPORATION, SUN REFINING & MARKETING COMPANY,[1] A PENNSYLVANIA CORPORATION, CHEVRON U.S.A. INC., A PENNSYLVANIA CORPORATION, F/K/A GULF OIL CORP., DEFENDANTS-RESPONDENTS, AND JOSEPH H. FERGUSON & SONS, INC.,[2] JOSEPH H. FERGUSON, ANTHONY BOLT, ROBERT FERGUSON, CRETE EQUIPMENT CORPORATION, PETER SOLDANO, AND STATE OF NEW JERSEY, DEPARTMENT OF TRANSPORTATION, DEFENDANTS-APPELLANTS, AND SUN OIL COMPANY, A DELAWARE CORPORATION, GULF OIL CORPORATION, A PENNSYLVANIA CORPORATION, GLADYS HAND SIMPSON LIGHT TRUST,[3] JAMES E. SIMPSON, MARGUERITE HOST, JAMES BIRMINGHAM, CUMBERLAND FARMS, INC., A DELAWARE CORPORATION, AND HERBERT ROTHSTEIN, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1996.
Decided April 1, 1996.
*185 Before Judges BAIME, VILLANUEVA and KIMMELMAN.
Michael Phillips argued the cause for appellants Joseph H. Ferguson & Sons, Inc., Anthony Bolt, Robert Ferguson and the Estate of Joseph H. Ferguson (Conte, Phillips & Clayton, attorneys; Mr. Phillips, of counsel and on the brief).
Kenneth P. Westreich argued the cause for appellants Crete Equipment Corporation and Peter Soldano (Swain, Dennen, Keszler, Bauman & Westreich, attorneys; Mr. Westreich, of counsel and on the brief).
Mark Turner Holmes, Deputy Attorney General, argued the cause for appellant State of New Jersey, Department of Transportation (Deborah T. Poritz, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Mr. Holmes, on the brief).
Marvin J. Brauth argued the cause for respondents Village of Ridgewood, Chevron U.S.A. Inc., Shell Oil Company and Sun Refining & Marketing Company (Wilentz, Goldman & Spitzer, attorneys; Mr. Brauth, of counsel; Frederick J. Dennehy and Mark F. Curley, on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
On January 21, 1992, the Village of Ridgewood through its counsel, Stoldt & Horan, instituted suit (the litigation) against various parties, including Shell Oil Company (Shell), Chevron U.S.A. Inc. (Chevron) and Sun Refining & Marketing Company (Sun) (collectively the oil company defendants); Joseph H. Ferguson & Sons, Inc., Anthony Bolt, Robert Ferguson and Joseph H. *186 Ferguson[4] (Ferguson defendants); and Crete Equipment Corporation and Peter Soldano (Crete defendants) (collectively the remaining defendants) which owned, operated, and/or franchised gas stations in Ridgewood.[5] These causes of action included negligence, trespass, private and public nuisance, and strict liability under N.J.S.A. 58:10-23.11. Ridgewood sought to recover compensatory and punitive damages in excess of $2 million from the defendants, jointly and severally, for alleged contamination of the Twinney and Walthery wells (the wells), two drinking-water wells in Ridgewood. Sun and the Gladys Hand Light Trust filed third-party complaints against the State of New Jersey, Department of Transportation (DOT).
All parties answered Ridgewood's complaint and amended complaint and asserted cross-claims against each other for indemnity and contribution. These cross-claims are still pending.[6] On March 19, 1993, Ridgewood filed a second amendment to the complaint adding DOT as a direct defendant. The litigation was subsequently placed on the inactive list pending the outcome of two claims filed with the Administrator of the New Jersey Spill Compensation Fund.

The New Jersey Spill Compensation Fund Arbitration
In October 1990, Ridgewood had filed two claims (Spill Fund claims) with the Administrator of the New Jersey Spill Compensation Fund for reimbursement of costs incurred and damages related to remediation of contamination of the wells pursuant to *187 N.J.S.A. 58:10-23.11g to q.[7] In 1993, each oil company defendant and each of the remaining defendants filed a demand for arbitration of the Spill Fund claims (the arbitration). On June 14, 1994, Ridgewood and the oil company defendants entered into a settlement agreement (Agreement) in which they settled only their respective claims.
The firm of Wilentz, Goldman & Spitzer (Wilentz) represented Chevron in the arbitration proceedings in the Office of Administrative Law. Stoldt & Horan and co-counsel Goldshore, Wolf & Lewis represented Ridgewood.

The Oil Company Defendants' Settlement of Ridgewood's Claims Against Them
Under the terms of the Agreement, the oil companies, while denying liability, paid Ridgewood $825,000 "[i]n full settlement of all legal claims as set forth in the Spill Fund claims, Arbitration and the Litigation." Ridgewood released the oil company defendants from liability and withdrew all claims against the Spill Fund, with prejudice. In addition, Ridgewood designated the oil company defendants as its subrogees and assigned to the oil company defendants all its legal rights against all parties potentially responsible for the well contamination.
Under the terms of the Agreement, the oil company defendants were authorized to file a substitution of attorney for Ridgewood, thereby replacing Ridgewood's attorneys. Thus, on June 15, 1994, the Wilentz firm replaced Stoldt & Horan as attorneys for Ridgewood in the litigation. Thereafter, the Wilentz firm advised the attorneys for the Ferguson and Crete defendants as follows:
Under the assignment and subrogation from Ridgewood, the litigation will proceed in the name of Ridgewood but with the proceeds of any judgment going to the Oil Companies. We will handle the representation of Ridgewood. If a settlement is reached with your clients, a stipulation of dismissal will be provided dismissing Ridgewood's claims as well as the crossclaims of the Oil Companies....

*188 With respect to a settlement demand, the Oil Companies will accept $1 million from all remaining defendants in full settlement of the claims against them. This represents the settlement paid to Ridgewood plus environmental expenses of the Oil Companies. The offer will remain open only until September 19, 1994. Thereafter, the Oil Companies intend to seek recovery of the full amount complained by Ridgewood, in the neighborhood of $2 plus million.

Initial Motion for Summary Judgment By Remaining Defendants
In December 1994 the remaining defendants filed a joint motion for summary judgment to dismiss Ridgewood's complaint, asserting that Ridgewood, pursuant to the Agreement, had received full compensation for its claims and had no further interest in the litigation. According to the remaining defendants, the motion[8] also sought declaratory relief from the trial court that (1) Ridgewood did not have the ability to assign its underlying tort claims to the oil company defendants; (2) the oil company defendants, as settling tortfeasors, could not assert any right of subrogation against the remaining defendants; and (3) any potential claims that the oil company defendants might have had for contribution under common law and the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -24, were extinguished by their settlement with Ridgewood without a final judgment of liability.
The Wilentz firm, in its capacity as counsel for Ridgewood, Chevron, and lead counsel for the other oil company defendants, opposed the motion and filed a cross-motion on behalf of the oil company defendants for leave to file amended cross-claims against the remaining defendants for contribution under the Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11. This cross-motion was granted.
The trial court denied the remaining defendants' motion in its entirety, finding Ridgewood's assignment of its tort claim to be proper. The trial court explained that the settlement provided an efficient and prudent means of facilitating the cleanup and that *189 "the Remaining Defendants should not be permitted to reap an unearned windfall to the extent that they caused contamination but failed to remediate." The trial court did not address whether the oil company defendants could be subrogated to the rights of Ridgewood against the remaining defendants.

The Motion to Disqualify the Wilentz Firm
On April 18, 1995, counsel for the Ferguson defendants requested from the governing body of Ridgewood copies of "[a]ll Closed Session Minutes pertaining to the Village of Ridgewood v. Shell Oil Co. case, damages, and settlement." John Horan of Stoldt & Horan, counsel for Ridgewood, replied:
Please note that we cannot comply with your request. First of all, you are requesting minutes of a closed session meeting that directly concerns [sic] pending litigation. Those minutes are confidential. Secondly, and more important, the very substance of the minutes which you seek is protected by attorney-client privilege.
To a large extent, the minutes are also protected by work product privilege.
Additionally, I point out that the firm of Wilentz, Goldman & Spitzer is now counsel of record for [Ridgewood] in the litigation at hand. Since the minutes directly concern the Village's litigation strategy, settlement decisions, etc., concerning all parties, (including Shell), we do not believe that even the Wilentz firm is entitled to discovery of such closed session minutes. (Emphasis added.)
Counsel for the Ferguson and Crete defendants questioned the propriety of the Wilentz firm's dual representation of the plaintiff and a co-defendant, and on June 8, 1995, filed a motion to disqualify the Wilentz firm "from further participation on behalf of any party" in the litigation. The DOT subsequently joined in that motion, but only to the extent of seeking to disqualify the Wilentz firm from further representation of Ridgewood.
After hearing oral argument on September 22, 1995, the trial court denied the motion. The trial court found that neither an actual nor apparent conflict of interest was created by the Wilentz firm's representation of both Ridgewood and the oil company defendants since the firm represented Ridgewood "in name only, and the real parties in interest are the oil company defendants. Rule 4:26-1." The trial court explained that while it was true that at one time the interests of Ridgewood and the oil company *190 defendants were adverse to each other, by virtue of the settlement agreement and assignment thereunder "they are not presently in conflict and were not in conflict when the Wilentz firm took over the representation of Ridgewood." The trial court further found no evidence of a conflict of interest inherent in the determination by Ridgewood's attorney that the minutes of closed session meetings were not available to those with an adverse interest to Ridgewood at the time the minutes were compiled.

Appellate Proceedings
The Crete and Ferguson defendants filed a motion for leave to appeal the trial court's denial of its motion to disqualify the Wilentz firm. On November 16, 1995, this court granted the motion and accelerated the appeal. In addition, this court ordered the parties to "brief the issue as to the legality and validity of the assignment of the cause of action" by Ridgewood to the oil company defendants.

I.
The Wilentz firm has represented defendant Chevron since the inception of this litigation and has continued to represent Chevron on its cross-claims against the remaining defendants. Since approximately September 12, 1994, the Wilentz firm has also represented Ridgewood as an active litigant pursuing its purported remainder case against the non-settling remaining defendants.

A. Does the Dual Representation Create an Actual Conflict of Interest under RPC 1.7(a).

Under the Rules of Professional Conduct,
A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless: (1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and (2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.
[RPC 1.7(a).]
*191 The oil company defendants argue that because they have settled their case with Ridgewood and taken an assignment of Ridgewood's surviving claims against the remaining defendants, the interests of Ridgewood and the oil company defendants coincide and no conflict exists.
The remaining defendants contend that the respective litigation postures of Ridgewood and Chevron clearly reveal a conflict of interest. In support of their contention, they point to the Wilentz firm's letter of September 8, 1994, in which the firm acknowledged that "the litigation will proceed in the name of Ridgewood but with the proceeds of any judgment going to the Oil Companies." Thus, it is Ridgewood who will pursue the claims, regardless of who will receive the proceeds of any future judgment, and Ridgewood will continue to proceed in such a way as to maximize its recovery, i.e., it will seek to prove damages as high as possible under the law. These damages now sought in the name of Ridgewood are many times greater than the $825,000 Ridgewood received to settle the case.
By way of contrast, Chevron's only remaining legal dispute is its cross-claim for contribution against the remaining defendants.[9] In order to support its claim for contribution, Chevron will attempt to prove that it has contributed more than its equitable share of the cleanup and removal costs associated with Ridgewood's remediation of the wells. To do so, Chevron will seek to minimize Ridgewood's damages which may have been caused by Chevron. This, in turn, will have the effect of maximizing the percent of total damages which Chevron already has paid, thereby supporting its argument that it has paid more than its fair share.
The adverse positions which Ridgewood and Chevron must take in the litigation become abundantly clear upon review of the *192 statement of contested issues submitted to the arbitrator of Ridgewood's Spill Fund claims by the Wilentz firm on behalf of Chevron. In that statement, Chevron argued that the well contamination may have been caused by sources over which Ridgewood had control; that the majority of costs for the remediation were "for the purpose of complying with anticipated radon requirements" and not for the cleanup of gasoline; that the treatment system allegedly installed for the purpose of cleaning up defendants' alleged pollution "far exceed[ed] normal industrial pricing"; and that Ridgewood sustained no lost profits.
As the DOT properly pointed out,
having taken those positions, it is an inescapable conflict of interest for the Wilentz firm to now pursue on behalf of Ridgewood the same damages which it contested and will continue to contest on behalf of Chevron. Wilentz cannot seek to maximize damages for Ridgewood's remainder case at the same time that it seeks to minimize Ridgewood's damages to prove Chevron's right to contribution.
Ridgewood cannot overcome this conflict by its consent. See Ahto v. Weaver, 39 N.J. 418, 431, 189 A.2d 27 (1963) (stating that where matters of public interest are at stake, an attorney "may not represent conflicting interests even with consent of all concerned").
In addition, the discovery process may be compromised by the dual representation undertaken by the Wilentz firm. As noted earlier, Ridgewood's original counsel denied the request by the remaining defendants for the closed session minutes of meetings held by Ridgewood to discuss the litigation and indicated that he felt these minutes would not be made available even to the Wilentz firm (who by that time was Ridgewood's counsel). If Ridgewood refused to make full disclosure of potentially relevant information to its own attorneys, its attorneys cannot make the full disclosure required by Rule 4:10-2(a). Subsequent events proved that the remaining defendants' concerns about the distortion of the discovery process resulting from this dual representation were well-founded.
On October 25, 1995, the Ferguson defendants served a document request on the Wilentz firm as counsel for Ridgewood, again *193 seeking to obtain the closed session minutes. The Wilentz firm on behalf of Ridgewood refused to produce the requested documents on the grounds "that such minutes represent attorney-client privileged communications and are otherwise privileged from discovery." Thereafter, the Ferguson defendants served a request on the Wilentz firm in its capacity as counsel for defendant Chevron for the closed session minutes. By letter dated January 10, 1996, the Wilentz firm on behalf of Chevron advised counsel for the Ferguson defendants that it had "none" of the requested documents.[10]
We agree with the Ferguson and Crete defendants that this correspondence "emphatically demonstrate[s] that the Wilentz firm's dual representation of the plaintiff [Ridgewood] and defendant Chevron has already grossly tainted the orderly discovery process, and illustrate[s] most clearly why that law firm should not be allowed to continue in this case." In addition, because we have determined that the purported assignment from Ridgewood to the oil company defendants is invalid, see infra, Wilentz cannot represent Ridgewood.

B. Does the Dual Representation Create an Impermissible Appearance of Impropriety under RPC 1.7(c)?

The Rules of Professional Conduct provide, in pertinent part, as follows:
[I]n certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.
[RPC 1.7(c)(2).]
The appearance of impropriety "assumes an added dimension" where one of the parties being represented is a public entity, since "[p]ositions of public trust call for even more circumspect conduct." *194 In re Opinion 415, 81 N.J. 318, 324, 407 A.2d 1197 (1979). We agree with the DOT that a knowledgeable citizen of Ridgewood would believe that "[t]he risk of disservice to Ridgewood in circumstances where it withholds information relevant to the lawsuit from its own counsel is inescapable."
The Wilentz firm's dual representation of Ridgewood and the oil company defendants constitutes an actual conflict of interest and creates an impermissible appearance of impropriety. Accordingly, the Wilentz firm is disqualified from representing Ridgewood.

C. Should Wilentz, Goldman & Spitzer Be Disqualified from Representing Chevron Also?

Whether the Wilentz firm should be disqualified from representing Chevron, as the Ferguson and Crete defendants contend, is a more difficult question.
The remaining defendants cite several cases in which the Supreme Court sanctioned attorneys for representing first one litigant and then the adverse party in the same dispute. In re Blatt, 42 N.J. 522, 201 A.2d 715 (1964); In re Cipriano, 68 N.J. 398, 346 A.2d 393 (1975). In each of those cases, however, the original clients were not consulted with regard to the attorney's decision to subsequently represent the adverse party. By way of contrast, Ridgewood not only had full knowledge of the Wilentz firm's representation of Chevron but the advice of its own independent counsel prior to the attorney substitution.
Although the Wilentz firm has represented Ridgewood since September 1994, the Ferguson and Crete defendants have failed to identify any actual or potential harm to the remaining defendants by virtue of the firm's dual representation. We believe that any potential harm at this time is, at most, de minimis. Moreover, there is no evidence in the record that the Wilentz firm's dual representation has tainted or will taint its representation of Chevron to the extent that it should be required to withdraw as counsel for Chevron.

*195 II.

Is Ridgewood's Purported Assignment of Its Cause of Action Against the Remaining Defendants Valid and Enforceable?
Under the Agreement between Ridgewood and the oil company defendants, Ridgewood assigned
all of its legal rights against all potential responsible parties as named in the Spill Fund Claims, Arbitration, and Litigation, as well as all legal rights against all other known or unknown entities which caused contamination in the [wells]. The legal rights assigned shall be all available legal rights, and shall not be limited to any extent.
By virtue of this assignment, the oil company defendants intended to continue Ridgewood's tort action under Ridgewood's name, but with the proceeds of any judgment going to the oil companies. The remaining defendants were given the opportunity to pay the oil company defendants $1 million "in full settlement of the claims against them."
A tort claim cannot be assigned prior to judgment. East Orange Lumber Co. v. Feiganspan, 120 N.J.L. 410, 413, 199 A. 778 (Sup.Ct. 1938), aff'd, 124 N.J.L. 127, 10 A.2d 732 (E. & A. 1940); United States Casualty Co. v. Hyrne, 117 N.J.L. 547, 552, 189 A. 645 (E. & A. 1937). This rule has been consistently reaffirmed. See DiTolvo v. DiTolvo, 131 N.J. Super. 72, 79, 328 A.2d 625 (App.Div. 1974) (tort claims "cannot be made the subject of assignment before judgment"); Costanzo v. Costanzo, 248 N.J. Super. 116, 121, 590 A.2d 268 (Law Div. 1991) (public policy precludes assignment of tort claims). Since no judgment existed in this case, there was nothing Ridgewood could legally assign to the oil company defendants and Ridgewood's attempt to assign its right to obtain a future judgment against the remaining defendants is a nullity.
The oil company defendants, however, seek to avoid the prohibition against the assignment of tort claims by arguing that, despite Ridgewood's assignment of "all legal rights" against all potentially responsible parties, Ridgewood never withdrew from the litigation *196 and never sought to have the oil company defendants substituted as plaintiffs.
As the Court stated in United States Casualty Co. v. Hyrne, supra, "[i]t has always been held that the right to bring an action in the courts of this state is possessed by the injured person alone, unless the injured person assigns his right to someone else, which cannot be done before judgment when the action sounds in tort." 117 N.J.L. at 552, 189 A. 645. The oil company defendants are not the injured parties in this case; they are some of the alleged tortfeasors.
Since Ridgewood was fully compensated for its losses under the Agreement, it had no surviving claims which it could assert against the remaining defendants. See Daily v. Somberg, 28 N.J. 372, 383, 146 A.2d 676 (1958) (the release of a settling joint tortfeasor will also release the nonsettling joint tortfeasor if "the consideration constitutes full compensation or is accepted as such"). In addition, even if Ridgewood had surviving claims, it could not assign those claims prior to judgment.

III.

Can the Oil Company Defendants Assert Any Right of Subrogation Against the Remaining Defendants?
We did not direct the parties to brief the validity and legality of the subrogation of Ridgewood's claims, and the remaining defendants did not move for leave to appeal from the denial of their motion for summary judgment seeking a declaration that the subrogation was invalid. However, since the issue was addressed in the appellate briefs, we will consider it.
The Agreement provides that "[u]nder the rights of subrogation, the [oil company defendants] shall have the right to pursue in the name of [Ridgewood] against any and all third parties any legal action arising out of the alleged contamination of [the wells]." Ridgewood allegedly was the subrogor and the oil company defendants allegedly were the subrogees.
*197 In Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288 (1954), the Supreme Court explained the applicability of subrogation as follows:
It is most often brought into play when an insurer who has indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss. In such a case it is only equitable and just that the insurer should be reimbursed for his payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured the third party would go free despite the fact that he has the legal obligation in connection with the loss or damage.
[Id. at 171, 104 A.2d 288.]
In Culver, the Supreme court emphasized that a right of subrogation does not arise spontaneously, but rather is created by an agreement between an insurer and the insured,[11] a right created by statute, or by "a judicial `device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it.'" Culver v. Insurance Co. of N. Am., 115 N.J. 451, 456, 559 A.2d 400 (1989). It is a right which is intended to achieve complete justice between the parties. "`The one asserting the right cannot thereby profit from his own wrong; he must, himself, be without fault.'" Standard Accident Ins. Co. v. Pellecchia, supra, 15 N.J. at 172, 104 A.2d 288 (quoting Bater v. Cleaver, 114 N.J.L. 346, 353, 176 A. 889 (E. & A. 1935)). Understandably, then, "the parties to a contract cannot by their agreement control the principles of equity which govern subrogation to a claim against a third party." Manzo v. City of Plainfield, 59 N.J. 30, 34, 279 A.2d 706 (1971).
None of Culver's three criteria apply here: the oil companies are not Ridgewood's insurers; there exists no applicable statutory right of subrogation; and since the oil companies can pursue claims for contribution pursuant to the Spill Act, N.J.S.A. 58:10-23.11f(a)(2), their remedy at law is not only adequate, but "is as efficient as the equitable remedy of subrogation." See Fleischer *198 v. James Drug Stores, 1 N.J. 138, 146, 62 A.2d 383 (1948); cf. Board of Educ. v. New Jersey Educ. Ass'n, 53 N.J. 29, 43, 247 A.2d 867 (1968) (holding that "equity will leave the parties to a remedy at law if money damages will adequately compensate for the wrong"). Therefore, the equitable remedy of subrogation is unwarranted here.
The oil company defendants argue that if they are precluded from asserting their contractual right of subrogation, the remaining defendants "would reap an unearned windfall to the full extent of the contamination that they caused but did not pay to remediate." The remaining defendants argue that it would be a far greater inequity to allow the oil company defendants to recover under the guise of subrogation more than the $825,000 they paid to Ridgewood.
All the culpable defendants bear responsibility for the damage done to Ridgewood's drinking-water wells and should be obligated to pay for it. Since Ridgewood will receive no further compensation for its losses, however, it offends basic principles of jurisprudence to extend the equitable principle of subrogation merely to benefit the alleged wrongdoers' scheme to profit from the harm done another.

CONCLUSION
We reverse the trial court's denial of the motion brought by the remaining defendants to disqualify the Wilentz firm from representing Ridgewood and order such disqualification. We affirm that part of the order permitting the Wilentz firm to continue to represent Chevron and the other oil company defendants. In addition, we remand this matter to the trial court to enter an order that the purported assignment by Ridgewood to the oil company defendants is invalid and that the oil companies have no right of subrogation to pursue Ridgewood's surviving claims, if any.
NOTES
[1] Improperly impleaded as Sun Oil Company of Pennsylvania.
[2] Improperly impleaded as J.H. Ferguson and Sons, Inc.
[3] Improperly impleaded as Gladys H. Light.
[4] Joseph H. Ferguson apparently died after this action was filed.
[5] On November 24, 1992, Ridgewood amended its complaint to name the owner of the property where the Sun station was located.
[6] The litigation was ultimately dismissed with prejudice as to Shell, Sun Oil Company, Sun, Chevron, Gulf Oil Corporation, Gladys Hand Simpson Light Trust, and James Birmingham. At oral argument we were informed that the litigation was dismissed also with respect to James E. Simpson, Marguerite Host, Cumberland Farms, Inc. and Herbert Rothstein.
[7] For an explanation of the remedies under the New Jersey Spill Compensation Fund, see In re Thomas, 278 N.J. Super. 580, 583, 651 A.2d 1063 (App.Div. 1995).
[8] A copy of the motion was not provided to this court.
[9] Under the Spill Act, once a party establishes a right to contribution, the "court may allocate the costs of cleanup and removal among liable parties using such equitable factors as the court determines are appropriate." N.J.S.A. 58:10-23.11f(a)(2).
[10] On January 31, 1996, we granted the Ferguson and Crete defendants leave to supplement the record with this information.
[11] The oil company defendants interpret this broadly to mean that the rights of subrogation "can arise through agreement between the parties."