

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-1997

# Integrated Solutions v. Ser Support

Precedential or Non-Precedential:

Docket 96-5597

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Integrated Solutions v. Ser Support" (1997). *1997 Decisions*. Paper 202.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/202

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 22, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5597

INTEGRATED SOLUTIONS, INC.

v.

SERVICE SUPPORT SPECIALTIES, INC.;
GARY HILLMAN, an individual;
PAUL SHERMAN, an individual;
AARON CRUISE, an individual;
JOSEPH O'NEILL, an individual;
MIDLANTIC NATIONAL BANK;
UNITED JERSEY BANK

Integrated Solutions, Inc. ("ISI"),

Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 94-04953)

Argued: June 13, 1997

Before: MANSMANN, NYGAARD, <u>Circuit Judges</u>, and
ROSENN, <u>Senior Circuit Judge</u>.

(Opinion filed August 22, 1997)

Susan Stryker, Esq.
Suite 1400
Sterns & Weinroth
50 West State Street
P.O. Box 1298
Trenton, N.J. 08607

Paul J. Hayes, Esq.
Dean G. Bostock, Esq. (Argued)
Weingarten, Schurgin, Gagnebin
 & Hayes
Ten Post Office Square
Boston, MA. 02109

Counsel for Appellant

Stuart Gold, Esq. (Argued)
Budd, Larner, Gross, Rosenbaum,
 Greenberg & Sade
150 John F. Kennedy Parkway
CN 1000
Short Hills, New Jersey 07078

Counsel for Appellees

**OPINION OF THE COURT**

NYGAARD, <u>Circuit Judge</u>:

Integrated Solutions, Inc., appeals an order dismissing its state law claims against Service Support Specialties, Inc., and certain individuals working for that company (collectively "Service Specialties"). The district court concluded that Integrated lacked standing to pursue the state law claims because its purchase of the claims from a trustee in bankruptcy was <u>void ab initio</u> under New Jersey law. On appeal, Integrated argues that federal law preempts the New Jersey state law prohibition against assigning prejudgment tort claims and permits a bankruptcy trustee to assign tort claims in executing its duties to liquidate and distribute the bankruptcy estate. We disagree and will affirm.

I.

On July 22, 1994, Machine Technology, Inc. filed a petition for relief under Chapter 11 of the Bankruptcy Code. Before filing for bankruptcy protection, Machine Technology had financed its operations through loans from both Midlantic Bank and United Jersey Bank. The debt was secured by separate security agreements in assets such as accounts, inventory, machinery and equipment. On September 6, 1994, Integrated purchased certain assets of Machine Technology through the banks which held security interests in the assets.

On August 1 and 2, 1994, certain individual defendants who were former Machine Technology employees entered Machine Technology's offices and took or copied various documents, diagrams, specifications and drawings of an allegedly proprietary nature. On August 3, these individual defendants incorporated Service Specialties. Less than one week later, Service Specialties opened for business and began servicing Machine Technology accounts until September 6, when Integrated purchased the Machine Technology assets from the banks.

Integrated filed a complaint in the district court alleging a series of state law claims and a federal copyright infringement claim against Service Specialties and the individual defendants.1 Integrated specifically claimed that the defendants had misappropriated Machine Technology assets, used these assets to set up Service Specialties, and were unlawfully competing with Integrated. Integrated also sought a preliminary injunction to enjoin the defendants from destroying and concealing documents and information, using confidential commercial information, infringing on Integrated copyrights, and engaging in unfair competition during the suit. On March 15, 1995, the district court denied Integrated's request for an injunction on the ground that Integrated was not "a successor in interest to MTI [Machine Technology], did not purchase all general intangibles of MTI, and thus [had] no standing to

_____

1. Integrated stated causes of action for unfair competition, breach of the duty of loyalty, misappropriation of confidential information, interference with contractual relations, conversion, and replevin.

assert claims which MTI might have had against defendants for misappropriation of confidential information." Integrated Solutions, Inc. v. Service Support Specialties, Inc., No. 94–4953, slip op. at 9 (D.N.J. March 15, 1995).

In an effort to cure its standing problem, Integrated subsequently purchased all of Machine Technology's remaining assets from Machine Technology's bankruptcy trustee. According to the Bill of Sale, Integrated purchased, inter alia, all general intangibles, all intellectual property, and "[a]ll claims and causes of action; including the right to recover for any past and future damages, arising out of or relating to the Assets . . . ." J.A. at 2615–16. This purchase and sale was authorized and approved by the Bankruptcy Court.

In response, Service Specialties filed a motion for summary judgment seeking the dismissal of Integrated's state law claims. Service Specialties argued that the bankruptcy trustee's sale of Machine Technology's claims violated New Jersey law which prohibited assigning prejudgment tort claims and hence, Integrated had no standing to pursue the state law causes of action. The district court agreed and dismissed Integrated's state law claims. This timely appeal followed.[2]

II.

On appeal, Integrated argues that New Jersey's common law prohibition against assigning state tort law claims before judgment is preempted by federal bankruptcy law. New Jersey law is preempted, Integrated maintains, because by preventing the sale of prejudgment tort claims belonging to the estate, New Jersey law serves to defeat a primary purpose of the Bankruptcy Code: namely, the expeditious liquidation and distribution of the bankruptcy estate to its creditors. As such, Integrated concludes, New

_____

2. The district court also concluded that Integrated had standing to pursue its copyright claim because that claim was freely assignable under federal law. The parties subsequently stipulated to dismissal of the copyright claim in order to expedite our review of the district court's dismissal of the state law claims.

4

Jersey law must yield to the conflicting federal interest under the Supremacy Clause.

Our review is plenary. In re Roach, 824 F.2d 1370, 1372 (3d Cir. 1987).

III.

Whether federal bankruptcy law preempts New Jersey state law prohibiting the assignment of prejudgment tort claims requires us to resolve three separate questions: (1) Does New Jersey law prohibit the assignment of prejudgement tort claims?; (2) Are a debtor's prejudgment tort claims "property of the estate" under 11 U.S.C. § 541?; and (3) Did Congress intend to preempt state law restrictions on the assignability of tort claims under federal bankruptcy law? We will address each question in turn.

A.

The relevant New Jersey statute dealing with assignability is section 2A:25-1, which provides in pertinent part:

All contracts for the sale and conveyance of real estate, all judgments and decrees recovered in any of the courts of this state or of the United States or in any of the courts of any other state of the United States and all choses in action arising in contract shall be assignable, and the assignee may sue thereon in his own name.

N.J. Stat. Ann. § 2A:25-1. Because the statute does not address causes of action arising from tort claims, we look to case law for guidance. New Jersey courts have consistently held that, as a public policy matter, tort claims cannot be assigned before judgment. Village of Ridgewood v. Shell Oil Co., 673 A.2d 300, 307-08 (N.J. Super. Ct. 1996); Costanzo v. Costanzo, 590 A.2d 268, 271 (N.J. Super. Ct. 1991) ("[I]n New Jersey, as a matter of public policy, a tort claim cannot be assigned."); East Orange Lumber Co. v. Feiganspan, 199 A. 778-79 (N.J. 1938); see also Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 865-67 (D.N.J. 1993) ("It is clear that under New Jersey law, choses

5

in action arising out of tort are not assignable prior to judgment.").

Integrated concedes this general principle, but argues, without citation, that New Jersey's non-assignability rule does not apply to intentional torts or in the bankruptcy context. To bolster its argument, Integrated contends that the non-assignment rule "has never been expanded to intentional torts . . . or to persons appointed and acting under the authority of the federal bankruptcy statute." Appellant's Reply Br. at 5. Integrated, however, points to no support for its argument that the rule is intended to be limited in the manner it suggests, nor have we found any such limit in the case law. As such, we find Integrated's attempts to place its tort claims outside the New Jersey rule without support and unpersuasive. New Jersey law clearly forbids the assignment of prejudgment tort claims, and applies to the tort claims at issue here.

B.

The Bankruptcy Code defines a bankrupt's estate broadly to encompass all kinds of property, including intangibles and causes of action. As § 541 reads in pertinent part:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. . . .

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate . . . <u>notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law–</u>

<u>(A) that restricts or conditions transfer of such interest by the debtor</u> . . . .

11 U.S.C. § 541 (emphasis added). As the legislative history for this section specifies, "The scope of this paragraph is

6

broad. It includes all kinds of property, including tangible or intangible property, <u>causes of action</u> . .. and all other forms of property currently specified in section 70a of the Bankruptcy Act . . . ." H.R. Rep. No. 95-595, at 367 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6323 (emphasis added). Moreover, the House Report clearly explained that the purpose of section 541 was to move away from the "complicated melange of references to State law," and to "determine[ ] what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests, such as . . . tangible and intangible property, choses in action, [and] causes of action . . . <u>whether or not transferable by the debtor</u>." <u>Id.</u> at 175-76, 1978 U.S.C.C.A.N. at 6136 (emphasis added).

Relying on the legislative history and the obvious broad sweep of § 541(a)(1), numerous courts have concluded that "[s]ection 541 eliminated the requirement that property must be transferable or subject to process in order to become initially part of the estate." <u>In re Geise</u>, 992 F.2d 651, 655 (7th Cir. 1993) (citation omitted); <u>see also In re Cottrell</u>, 876 F.2d 540, 542-43 (6th Cir. 1989) (holding that a personal injury action was estate property notwithstanding that the action was nontransferable under Kentucky state law); <u>Sierra Switchboard Co. v. Westinghouse Electric Co.</u>, 789 F.2d 705, 709 (9th Cir. 1986) ("By adopting a comprehensive definition of property, the Bankruptcy Reform Act reduced the bankruptcy court's cumbersome reliance on state law analysis for determining property to be included in the estate."); <u>Tignor v. Parkinson</u>, 729 F.2d 977, 980-81 (4th Cir. 1984) (holding that an unliquidated personal injury claim was estate property notwithstanding that the claim was nontransferable under Virginia law); <u>see also</u> L. King, <u>Collier on Bankruptcy</u>, ¶ 541.07 (15th ed. rev. 1996) ("[U]nder the Code, <u>all</u> interests of the debtor in property come into the estate pursuant to section 541(a)(1) regardless of whether they are transferable, or whether creditors could have by some means reached them."). These courts have clearly found that state laws restricting the transfer or assignment of property, including causes of action and personal injury

7

claims, do not preclude the property from passing to the bankrupt's estate under § 541.

While we have not decided the issue, we have previously noted the broad sweep of § 541 and the fact that the section expressly includes "causes of action" as property interests included in the estate. See, e.g., In re Nejberger, 934 F.2d 1300, 1301-02 (3d Cir. 1991); Counties Contracting & Constr. Co. v. Constitution Life Ins. Co., 855 F.2d 1054, 1057 n.3 (3d Cir. 1988). Given § 541's broad scope, its legislative history, and the weight of authority from other jurisdictions, we conclude that state laws prohibiting the assignment or transfer of property, including causes of action and tort claims, do not prevent the inclusion of such property in the bankruptcy estate. Accordingly, we hold that the district court correctly determined that Machine Technology's state law tort claims were part of the property of the estate under § 541.

C.

Having determined both that New Jersey law prohibits transferring the tort claims at issue here and that the tort claims were part of the property of the estate, we are left to decide whether the trustee in Machine Technology's bankruptcy was permitted to sell the company's prejudgment tort claims to Integrated notwithstanding clear New Jersey state law prohibiting the assignment. In essence, this question raises a basic preemption issue: whether Congress intended to permit bankruptcy trustees to dispose of tort claims belonging to the estate in violation of state laws that forbid the assignment of such claims.

1.

We begin our analysis with the legal principles underlying the preemption doctrine. In In re Roach, 824 F.2d 1370, 1373-74 (3d Cir. 1987), we examined the preemption issue specifically in the bankruptcy context. We began our analysis by noting that under Article I, § 8 of the Constitution, Congress has the power to establish uniform bankruptcy laws throughout the United States and thus, "[w]here Congress has chosen to exercise its authority,

8

contrary provisions of state law must accordingly give way." Id. at 1373 (citation and internal quotations omitted). Nonetheless, we immediately made clear that "the usual rule is that congressional intent to pre-empt will not be inferred lightly. Pre-emption must be either explicit, or compelled due to an unavoidable conflict between the state law and the federal law." Id. (citations and internal quotations omitted). Because we are reluctant to assume federal preemption, we noted that any analysis should begin with "the basic assumption that Congress did not intend to displace state law." Id. (citations and internal quotations omitted). Relying on these general observations, we said:

Our task is to ascertain and give effect to congressional intent. However, we must approach that task with the realization that the Bankruptcy Code was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests.

Id. at 1374. Thus, under Roach we adopted a restrained approach to concluding that Congress has intended to preempt state law in the bankruptcy context.[3]

_____

3. Our approach to preemption outside the bankruptcy context is similarly restrained when considering areas that have traditionally been governed by state law. For example, in Witco Corp. v. Beekhuis, 38 F.3d 682, 687 (3d Cir. 1994), we made the following observations in the context of determining whether certain provisions of CERCLA preempted a Delaware probate statute:

In an area that has been traditionally occupied by the states, the court must assume that the prerogatives of the states were not to be superseded by a federal law unless it is the clear and manifest purpose of Congress. . . . Indeed, for preemption to occur in a field traditionally occupied by the states, there must be a "sharp" conflict between state law and federal policy.

Id. at 687 (citations omitted). Under this reasoning, since bankruptcy is a field traditionally occupied by the states, there must be a "sharp" conflict between state law and federal policy before we may conclude that federal law preempts state law in the bankruptcy context.

9

Supreme Court law attempting to balance federal and state law in the bankruptcy context has generally taken a similarly restrained approach to federal preemption. For example, in Butner v. United States, 440 U.S. 48, 54, 99 S. Ct. 914, 917–18 (1979), the Supreme Court emphasized that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." The Court then went on to instruct that:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy.

Id. at 55, 99 S. Ct. at 918 (citations and internal quotations omitted). Accordingly, the Butner court concluded that absent a countervailing federal interest, "the basic federal rule is that state law governs." Id. at 57, 99 S. Ct. at 919; see also Nobleman v. American Sav. Bank, 508 U.S. 324, 329, 113 S. Ct. 2106, 2110 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has left the determination of property rights in the assets of a bankrupt's estate to state law.") (citation and internal quotations omitted).

Courts applying the Butner analysis have relied on its holding to conclude that "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." In re American Freight Sys., Inc., 179 B.R. 952, 960 (Bankr. D. Kan. 1995); see also In re Transcon Lines, 58 F.3d 1432, 1438 (9th Cir. 1995) (noting that "nonbankruptcy law defines the nature, scope, and extent of the property rights that come into the hands of the bankruptcy estate"), cert. denied sub nom. Gumport v. Sterling Press, Inc., 116 S. Ct. 1016 (1996); In re Sanders, 969 F.2d 591, 593 (7th Cir. 1992) ("[A] bankruptcy trustee succeeds only to the title and rights in property that the

10

debtor had at the time she filed the bankruptcy petition."); In re FCX, Inc., 853 F.2d 1149, 1153 (4th Cir. 1988) ("The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case."); In re Bishop College, 151 B.R. 394, 398 (Bankr. N.D.Tex. 1993) (holding that a bankrupt's estate receives trust assets "subject to any restrictions imposed by state law, pre-petition").

These cases stand for the proposition that unless federal bankruptcy law has specifically preempted a state law restriction imposed on property of the estate, the trustee's rights in the property are limited to only those rights that the debtor possessed pre-petition. In other words, without explicit federal preemption, the trustee does not have greater rights in the property of the estate than the debtor had before filing for bankruptcy. See L. King, Collier on Bankruptcy, ¶ 541.04 ("Although [section 541(a)(1)] includes choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case.").

Notwithstanding these general principles, Integrated argues that certain Bankruptcy Code provisions evince a clear congressional intent to preempt state law restrictions on assigning tort claims. Specifically, Integrated points to two separate Code provisions, 11 U.S.C. §§ 704(1), 363(b)(1). Section 704 sets forth the trustee's duties, and subsection (1) instructs the trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest . . . ." 11 U.S.C. § 704(1). Somewhat similarly, section 363 defines the permissible use, sale, or lease of estate property, with subsection (b)(1) specifying that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

These Code provisions, Integrated argues, demonstrate that the "overriding purpose of the Bankruptcy Code is the expeditious and equitable distribution of the assets of the debtor's estate." Appellant's Br. at 17. Moreover, Integrated

11

contends that these provisions create an affirmative obligation on the trustee's part to dispose of the estate's assets as quickly and efficiently as possible, in order to maximize the potential return to creditors. In light of these express purposes of the Bankruptcy Code, Integrated argues, New Jersey's state law prohibiting the assignment of tort claims is in direct conflict with federal bankruptcy law and must be preempted.

Integrated's arguments, however, lack adequate legal support. For starters, neither § 363(b)(1) nor § 704(1) expressly authorizes the trustee to sell property in violation of state law transfer restrictions. Moreover, Integrated points to nothing in the legislative history that would even raise an inference that Congress intended to give the trustee such authority under these provisions. The clear lack of Congressional intent to preempt state law restrictions on transferring property of the estate is even more telling given the explicit language that Congress uses when it intends to displace state nonbankruptcy law in other provisions of the Bankruptcy Code. See, e.g., 11 U.S.C. § 1123(a) ("Notwithstanding any otherwise applicable nonbankruptcy law, a [reorganization] plan shall . . ."); 11 U.S.C. § 541(c)(1) ("[A]n interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in . . . applicable nonbankruptcy law (A) that restricts or conditions transfer of such interest by the debtor . . ."); 11 U.S.C. § 728(b) ("Notwithstanding any State or local law imposing a tax on or measured by income, the trustee shall make tax returns of income . . . only if [the] estate or corporation has net taxable income for the entire period after the order for relief under this chapter during which the case is pending."); 11 U.S.C. § 363(l) ("Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section . . . notwithstanding any provision in . . . applicable law that is conditioned on the insolvency or financial condition of the debtor . . ."). Because both Code provisions relied upon by Integrated fail to explicitly express Congress's intent to supersede state law restrictions on the transfer of estate property, Integrated's preemption claim is rendered wholly unconvincing, especially in light of our strong presumption

12

against inferring Congressional preemption in the bankruptcy context. See In re Roach, 824 F.2d at 1373-74.

In addition, there is case law from other circuits that directly cuts against Integrated's position. For example, in In re Schauer, 835 F.2d 1222 (8th Cir. 1987), the court rejected an argument that federal bankruptcy law preempted a Minnesota farm cooperative statute, and a cooperative's bylaws promulgated thereunder, which imposed transfer restrictions on a "patronage margin certificate" held by the debtor and passed to the bankruptcy estate pursuant to § 541. In reaching its decision, the court held that since state law defined the debtor's interest in property that became part of the estate, "§§ 363(b)(1) and 704 do not conflict with or invalidate the bylaws' restriction on transferability . . . ." 835 F.2d at 1225. The Schauer court further reasoned:

[T]here is no conflict between 11 U.S.C. §§ 363(b)(1), 704, and state law which defines the debtor's rights in property of the estate. Sections 363(b)(1) and 704 do not expressly authorize the trustee to sell property contrary to the restrictions imposed by state and contract law. These sections are simply enabling statutes that give the trustee the authority to sell or dispose of property if the debtors would have had the same right under state law.

Id. (emphasis added).

Significantly, other courts have followed the Schauer court's lead and also held that §§ 363(b)(1) and 704 are general enabling provisions that do not expand or change a debtor's interest in property merely because itfiles a bankruptcy petition. See, e.g., In re FCX, 853 F.2d at 1155 ("Neither § 363(b)(1), nor § 704, is an empowering statute in the sense that new rights or powers for dealing with the property of the estate are created. . . . [They] evince[ ] no intent to enlarge the trustee's rights to take such actions beyond the debtor's pre-bankruptcy rights."); In re Bishop College, 151 B.R. at 398-99 (holding that § 704 is merely an enabling statute that gives the trustee the authority to dispose of property "if the Debtor would have had the same rights under state law"). The reasoning of these cases is

13

persuasive and we conclude that neither § 363(b)(1) nor § 704(1) indicates a specific congressional intent to preempt state laws limiting the assignability of tort claims belonging to the estate. Since Machine Technology would have been prohibited from assigning its prejudgment tort claims under New Jersey state law, the trustee in Machine Technology's bankruptcy was subject to the same restriction. Accordingly, we hold that the trustee lacked legal authority

to assign the tort claims and hence, Integrated does not have standing to pursue its state law tort claims.

We realize that the events giving rise to the prejudgment tort claims at issue in this case occurred after Machine Technology filed its petition for bankruptcy relief under Chapter 11. This fact, however, does not change our analysis. In our view, absent specific Congressional intent to preempt state law restrictions imposed on property of the estate, the trustee's rights in the estate property are limited to only those rights that the debtor possessed, or would have possessed, pre-petition. This is the case regardless of whether the tort claims arise before or after a debtor's property has passed to the bankruptcy estate.

Indeed, drawing a distinction between prejudgment tort claims that arise before a debtor files a petition for bankruptcy and those that arise after the petition is filed is problematic for several reasons. First, there is simply no legal precedent for recognizing such a distinction. Second, regardless of whether prejudgment tort claims arise before or after a petition for bankruptcy has been filed, once the bankruptcy case commences the claims belong to the property of the estate and hence should be subject to identical treatment, absent a specific Congressional intent to augment the property rights inherent in the tort claims arising post-petition.

Finally, drawing a distinction between prejudgment tort claims arising pre- and post-petition is untenable in the case of Chapter 11 reorganizations where the debtor remains in possession of the property of the estate. In such cases, the debtor-in-possession, "subject to any limitations on a trustee serving in a case under [Chapter 11], and to such limitations or conditions as the court prescribes . . . shall have all the rights . . . and powers, and shall perform

14

all the functions and duties . . . of a trustee serving in a case under [Chapter 11]." 11 U.S.C. § 1107(a); see also In re Coastal Group, Inc., 13 F.3d 81, 84 (3d Cir. 1994) ("Section 1107(a) . . . extends the rights, powers and duties of a trustee to a debtor-in-possession subject to any limitations imposed upon a trustee."). Permitting debtors-in-possession to freely assign prejudgment tort claims in violation of state laws restricting the transfer of such claims, solely because the claims happen to arise after the debtor has filed a petition for bankruptcy, is tantamount to expanding the pre-petition rights of the debtor in the property of the estate simply because the debtor has commenced bankruptcy proceedings and become a debtor-in-possession. This is akin to providing the debtor with "a windfall merely by reason of the happenstance of bankruptcy," Butner, 440 U.S. at 55, 99 S.Ct. at 918, an outcome clearly in tension with the purposes of the Code and existing caselaw.

2.

As a final argument for preemption, Integrated contends that permitting the operation of New Jersey law will cause significant problems in actual bankruptcy practice. To support its argument, Integrated raises two separate concerns. First, Integrated asserts that unless bankruptcy trustees are permitted to sell tort claims belonging to the estate, most claims will be abandoned by trustees because of the time and money required to pursue the claims in court. This result will in turn, Integrated argues, frustrate the Code's purpose of ensuring the expeditious and equitable distribution of the debtor's estate. Second, Integrated maintains that permitting New Jersey law to operate in the bankruptcy context will create the negative incentive of encouraging other corporate officers to engage in the type of tortious behavior exhibited by Machine Technology's former officers in this case without fear of recourse for their wrongful conduct. We should not, Integrated warns, permit either federal bankruptcy law or state law, to promote such behavior.

Neither policy concern is particularly persuasive. With respect to Integrated's first argument, although we

15

recognize that state law restrictions on the transferability of tort claims could possibly impose additional litigation burdens on the trustee and adversely affect creditors waiting for estate liquidation, there are a number of counterbalancing factors to consider. First, we do not believe that bankruptcy trustees will be forced to abandon all tort claims belonging to the estate because of the time and resources necessary to sue on the claims. Rather, it is more likely that trustees will weigh the costs and benefits associated with pursuing each set of claims and prosecute those tort claims which, ex ante, promise to result in a net economic benefit to the estate and its creditors-- something every potential litigator should do.

Second, by refusing to find preemption of state law restrictions on the transferability of estate property, we are giving effect to an equally important purpose of the Bankruptcy Code: namely, upholding the fundamental principle that the estate succeeds only to the nature and the rights of the property interest that the debtor possessed pre-petition. Indeed, were we to find federal preemption of the state law restrictions at issue here, the trustee would possess greater rights in the property interest than the debtor. Clearly, unless the Code expressly indicates an intention to augment the rights and nature of the property interest in bankruptcy, the trustee only succeeds to the same rights the debtor possessed in the property pre-petition.

With respect to Integrated's second argument, it is misleading to suggest that unless we find federal preemption under the circumstances of this case, individuals will be permitted to engage in strategic, tortious behavior without fear of recourse. Indeed, this argument ignores the fact that the bankruptcy trustee retains the power to pursue state law tort claims against tortfeasors, thus subjecting them to civil and criminal liability for their wrongful conduct. Moreover, as noted above, we believe that bankruptcy trustees are likely to prosecute all tort claims that will potentially result in a net economic benefit to the estate. As such, contrary to Integrated's warnings, the failure to find federal preemption here does not give tortfeasors a "free ride" to engage in tortious behavior and to abuse the Code's protections.

16

IV.

In summary, we conclude that the trustee lacked the authority to assign Machine Technology's state law tort claims to Integrated, and hence, Integrated lacks standing to sue on its state law tort claims. We will affirm the order of the district court.

17

ROSENN, Circuit Judge, dissenting.

The majority holds that the trustee in bankruptcy may not transfer the estate's pre-judgment tort claim in the absence of specific federal law preemption. The predicate for its holding is that "the trustee's rights in the property are limited to only those rights that the debtor possessed pre-petition." Maj. op. at 11. The debtor in this case, however, never possessed the rights of action in issue. The rights enured only to the trustee because the alleged claims of misappropriation of confidential information, conversion and other torts were committed against the estate after Machine Technology, Inc. ("MTI") had filed its petition for bankruptcy and while the estate property was in the hands of the trustee. Thus, the tort claims accrued solely to the trustee and their transfer in no way expands or alters the property interest possessed by the debtor when itfiled its bankruptcy petition.

Neutralizing the power and duty of the trustee to dispose of these choses of action will deprive the trustee and the creditors of the estate of $100,000 which Integrated Solutions, Inc. ("Integrated") paid the trustee. If the transfer made by the trustee and approved by the bankruptcy court is invalidated, winding up the estate must be deferred and maximization of benefits to creditors is deferred, all in the face of no prejudice to anyone having an honest interest in the estate and no offense to any specific identifiable interest. I, therefore, respectfully dissent.

I.

MTI filed for Chapter 11 protection on July 22, 1994. Integrated charges that on August 1 and 2, 1994, the individual defendants, former officers and employees of MTI, removed confidential files, drawings, and schematics from MTI's office while they were in the possession of the trustee in bankruptcy. Thus, the covert, unauthorized removal violated federal bankruptcy law. On August 3, the bankruptcy judge issued a bench order vacating the automatic stay provision of Section 362 of the Bankruptcy Code and directing the turnover of the collateral to the secured creditors, including all assets of MTI. The formal

18

order directing this turnover was entered on August 22, 1994. Integrated, engaged in the manufacture, sale and repair service of Photolite lithography equipment, bought the property from the secured creditors on September 6, 1994, for the sum of $800,000. Accordingly, these tort claims, which accrued after the property was in the bankruptcy estate, are subject to federal law. Their assignability should not be subject to the restrictions on assignability of pre-judgment tort claims imposed under arcane and obscure state common law.

One of the primary purposes of the Bankruptcy Code is the expeditious and equitable distribution of the assets of the debtor's estate. In re Smith-Douglass, Inc. , 856 F.2d 12, 15 (4th Cir. 1988) (citing Midlantic National Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 508 (1986) (Rehnquist, J., dissenting)). Thus, absent a restriction imposed by state law, there would be no problem in the free alienation of these pre-judgment tort claims under federal law. The majority believes that New Jersey's unexplained common law against the sale or assignment of pre-judgment tort claims should apply in this case because the trustee has no greater rights in the property in the estate than the debtor had prior to the filing for bankruptcy.

The tort claims, however, were never the property of the debtor and first appeared in the bankruptcy estate only after the filing of the bankruptcy petition. Thus, the claims are and has always been the sole and exclusive property of the trustee. He is duty bound to expeditiously dispose of it, as he must with the rest of the estate property, and that disposition should not be obstructed by an inexplicable state common law rule of inalienation merely because the debtor would have been bound by it. The transfer on its face shows no threat to public health, public safety, the state legal system, or any identifiable harm. On the other hand, "[u]nder the Supremacy Clause of Article VI of the United States Constitution, when enforcement of a state law or regulation would undermine or stand as an obstacle to the accomplishment of the full purposes and objectives of Congress in enacting a federal statute, the conflict must be resolved in favor of the federal law. The overriding purpose of the Code is the expeditious and equitable

19

distribution of assets of the debtor's estate." <u>Smith–Douglass</u>, 856 F.2d at 15 (citations omitted).

To facilitate this goal, the court in <u>Smith–Douglass</u> even permitted a trustee to unconditionally abandon a fertilizer plant, which contained violations of state environmental laws and regulations, where the estate lacked unencumbered assets with which to pay for clean-up and the plant itself did not present any imminent health or safety risks to the public. <u>Id</u>. at 16. <u>Accord New Jersey Dep't of Envtl. Protection v. North Am. Products Acquisition Corp.</u>, 137 B.R. 8 (D.N.J. 1992). In this case, the transfer of the tort claims pales into insignificance in offending state law. Although recognizing that preemption by the Supremacy Clause is a matter of congressional interest, <u>Hines v. Davidowitz</u>, 312 U.S. 52, 66–67 (1941), the Court did not suggest that an impractical obtuse "disruption of effectual administration of bankrupt estates under the Code was appropriate." <u>Smith–Douglass</u>, 856 F.2d at 16. "It is clear that if an identifiable federal interest is present and overriding, then recognition of a restriction to liquidate by agreement or state law must fail." <u>See In re Baquet</u>, 61 B.R. 495, 500 (Bankr. D. Mont. 1986).

A bankruptcy trustee, accorded the duty of managing the property in the estate and disposing of the assets, has a clear interest in protecting that property from misappropriation; otherwise the property loses value and diminishes the money that can be brought into the estate through the liquidation of assets to satisfy the creditors. This interest is even greater when the tortious conduct is committed against the property while it is in the bankruptcy estate, as opposed to pre-petition tort claims. It is analogous to certain crimes which become federal crimes only because they occurred on federal property. Although there may be no difference in the conduct itself, an assault which takes place on federal land (such as a national park) will be subject to federal law while one which occurs on any other property will be governed by state law. The federal interest is paramount because the act has been committed against property under the control of the federal government.

Moreover, the cases relied on by the majority for the proposition that state law restrictions imposed on the assignability are distinguishable. None of those cases involved tortious conduct committed against the debtor's property after it was part of the bankruptcy estate and in federal custody. In those cases, the estate property subject to the restrictions on alienability belonged to the debtor prior to the bankruptcy.

One of the principal cases relied upon by the majority is In re Schauer, 835 F.2d 1222 (8th Cir. 1987), which I believe is clearly inapposite. In Schauer, there was an attempt "to expand or change a debtor's interest in property merely because it filed a bankruptcy petition." Maj. op. at 13. There, the question was whether the trustee could transfer patronage margin certificates of a farm cooperative without the cooperative's approval. The patronage margin certificates are evidence of the ownership and interest in the cooperative and in the patron's revolving fund. Schauer, 835 F.2d at 1223. The cooperative's by-laws provided for redemption and barred any assignment of interest in the revolving fund without the consent of the board of directors. Id. at 1223–34. The trustee for the Schauers, who had filed for bankruptcy, requested the board of directors of the cooperative to consent to the assignment of the certificates to third parties, but the board refused in accordance with its standard business practice. Id. at 1224. The trustee sought the aid of the court to compel the transfer, but the court correctly held that the trustee acquired the certificates subject to the cooperative's by-laws and could not transfer or assign them without the consent of its board of directors. Id. at 1225. In the instant matter, however, the tort claims were never the property of the debtor and, of course, were never the subject of contractual limitations as in Schauer. Thus, the rule that the trustee succeeds only to the title and rights in property that the debtor had at the time he or she filed the bankruptcy petition, see In re Sanders, 969 F.2d 591, 593 (7th Cir. 1992), has no relevance here.

Furthermore, no compelling rationale exists for preventing the sale or assignment in this case. On the contrary, the estate and all interested parties would be best

21

served by allowing the transfer of the claims, as the bankruptcy court did, to Integrated. The sale of the tangible assets of the bankrupt estate could be seriously hindered if the purchaser cannot acquire the accompanying tort claims upon which the full value of the property may depend. For example, in the present situation, it is unlikely that Integrated would have purchased the tangible property in question if they knew that they would lack standing to retrieve the confidential files, drawings and schematics misappropriated by the tortfeasors or to obtain damages. Thus, barring the transfer of the tort claims can in certain situations have the destructive effect of also obstructing the sale of the assets in the estate, in contradiction to the overriding purpose of the Bankruptcy Code.

The majority expresses a concern that allowing the sale and transfer of a pre-judgment tort claim is "untenable" in case of Chapter 11 reorganizations where the debtor remains in possession of the estate property. Maj. op. at 14. This is a needless fear. So long as the debtor remains in possession, it bears essentially the same fiduciary obligation to the creditors as does the trustee for the debtor out of possession. "Moreover, the duties which the . . . Debtor in possession must perform during the proceeding are substantially those imposed upon the Trustee, § 188." Wolf v. Weinstein, 372 U.S. 633, 649 (1962). Accord Matter of Ribs-R-Us, 828 F.2d 199, 203 (3d Cir. 1987). If property of the debtor is wrongfully removed or stolen by a third party, recovery by the debtor's estate as in the case of property in the hands of a trustee, poses no harm to anyone except to the tortfeasor.

The majority's concern that permitting debtors-in-possession to freely assign pre-judgment tort claims "in violation of state laws restricting the transfer of such claims . . . is tantamount to expanding the pre-petition rights of the debtor in the property of the estate," maj. op. at 15, is more imaginary than real. First, transfers are not made wide and loose but only for a valuable consideration to the bankrupt estate, and, as in this case, with the approval of the court. 11 U.S.C. § 363(b)(1). Moreover, the situation here is one where the estate itself has been deliberately injured by dishonest tortfeasors. Second, the transfer is not

22

made in violation of any state legislative enactment; under the harshest interpretation, the assignment may superficially conflict with an obscure judicial concept. Third, the transfer neither offends nor alters the property interest of any party. As in the case of the trustee, the right to transfer tort claims committed against the debtor-in-possession facilitates its reorganization and expeditiously maximizes the estate for the benefit of creditors.

The defendants do not offer a sufficient answer when they assert the trustee may litigate the tort claim. This presupposes that the trustee has the funds to carry on the litigation, and appeals if necessary, and that the purchaser of the tangible assets is willing to stand by and wait. Moreover, if the trustee cannot transfer the claims, insufficient resources may compel him to abandon the claim rather than litigate it and thus diminish the value of the bankruptcy estate left for the creditors. Accordingly, common sense, fairness, and pragmatism dictate that the trustee be permitted to sell and transfer the pre-judgment tort claim and settle the estate as speedily as possible.

II.

Given the very specific facts of the present situation, in which the alleged tort occurred while the debtor's property was in the custody of the federal bankruptcy trustee, federal law governs the alienability of the property. The trustee may not be subjected to the state common law restrictions prohibiting the assignment of pre-judgment tort claims. Therefore, I would vacate the order of the district court granting Service Specialties' motion for summary judgment and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

23