NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1285-12T2

JOSEPH CHERILUS and MARIE
CHERILUS, his wife,

    Plaintiffs,

v.

FEDERAL EXPRESS (FOR DISCOVERY
PURPOSES ONLY),

    Defendant,

and

LINC FACILITIES SERVICES,

    Defendant/Third-Party
    Plaintiff-Appellant,

v.

COLUMBUS MCKINNON CORPORATION
a/k/a AMERICAN LIFTS,

    Defendant/Third-Party
    Defendant-Respondent.

> **APPROVED FOR PUBLICATION**
>
> **April 3, 2014**
>
> **APPELLATE DIVISION**

---

Argued November 4, 2013 – Decided April 3, 2014

Before Judges Ashrafi, St. John and Leone.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No.
L-1478-08.

David L. Wysnewski argued the cause for
appellant (Barry, McTiernan & Moore,
attorneys; Mr. Wysnewski and Laurel A.
Wedinger-Gyimesi, on the brief).

John E. Tyrrell argued the cause for respondent (Hollstein Keating Cattell Johnson & Goldstein, P.C., attorneys; Mr. Tyrrell, on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Plaintiff Joseph Cherilus was injured on a cargo lift at a Federal Express facility where he worked. He and his wife sued the company responsible for maintaining the lift, Linc Facilities Services (LFS). LFS filed a third-party claim of product liability against the manufacturer of the lift, Columbus McKinnon Corporation, which also uses the name American Lifts. The trial court granted summary judgment to American Lifts on the ground that the claims against it were barred by the ten-year statute of repose applicable to construction defects, N.J.S.A. 2A:14-1.1(a). Subsequently, LFS settled with plaintiffs on their personal injury claims. LFS now appeals the dismissal of American Lifts from the case so that it can pursue its claim for contribution for the settlement amount it paid to plaintiffs. We affirm.

I.

Viewed most favorably to LFS as the party opposing summary judgment, see R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), the record reveals the following facts and procedural history.

Cherilus was injured while working on the loading dock of a Federal Express warehouse at Newark Airport. He was on the platform of a large mechanical device known as a "torklift" or "air cargo lift" that is affixed to the warehouse loading dock and used to raise and lower heavy cargo between ground level and the level of truck beds. The torklift contains a mechanical part known as a "can-stop" or "floor lock" that pops up from the lift platform to prevent containers from rolling off the lift. When not up, a can-stop lies flat as part of the platform. Workers often step on a can-stop as they maneuver cargo on and off the lift.

On February 21, 2006, as Cherilus stepped on a can-stop, it malfunctioned and depressed below the level of the platform. Cherilus's foot stuck in the can-stop mechanism, and an air cargo container rolled into and seriously injured his leg.

Cherilus filed suit against LFS in February 2008. LFS was the contractor that provided warehouse services for Federal Express and was responsible for maintaining the cargo lifts at the facility. In November 2009, LFS filed a third-party complaint against American Lifts, the designer and manufacturer of the lift. An engineering expert issued a report and a certification stating that the malfunction was a result of a design defect in the can-stop's 1/4 inch "tabs" that were to

keep it level with the lift platform.  The expert stated that these tabs were not thick enough, and they failed prematurely. Cherilus's weight was sufficient to depress the can-stop below the level of the platform, ultimately resulting in his injury.

In March 2011, plaintiffs filed an amended complaint adding American Lifts as a direct defendant on their personal injury claims.

American Lifts had designed and manufactured the lift in accordance with Federal Express's specifications and approval. Nineteen such torklifts were installed in the warehouse at which Cherilus was injured, and there was some evidence, although not detailed or precise, that similar ones may have been in use at one or more other Federal Express facilities.  The torklift was bolted into a cement foundation of the warehouse dock, and the bolts were covered with grout.  American Lifts provided instructions for but did not participate in the installation. Once the lift was installed, it was never moved.  Nor was it intended to be moved.

On this evidence, the trial court concluded that the torklift was an improvement to the warehouse property and that N.J.S.A. 2A:14-1.1(a) barred any suit for personal injury brought against its designer more than ten years after the lift was installed and put to use.  There was no dispute that the

lift was shipped to Federal Express on March 8, 1995, and was in use by the summer of 1995, that is, more than ten years before Cherilus was injured in February 2006. Consequently, the court granted summary judgment to American Lifts dismissing both plaintiffs' direct personal injury claims and the third-party contribution claim of LFS. We denied LFS's motion for leave to file an interlocutory appeal from the trial court's summary judgment decision.

In May 2012, with the aid of a conference conducted by the trial judge, LFS reached a settlement with plaintiffs on their personal injury claims. It then filed a stipulation of dismissal of plaintiffs' claims. Plaintiffs also executed a release in favor of LFS. In September 2012, LFS obtained from plaintiffs an assignment of their claims against American Lifts for purposes of pursuing its appeal.

## II.

Initially, we agree with American Lifts that the assignment of plaintiffs' personal injury claims to LFS has no effect on this appeal. Plaintiffs did not have a judgment against American Lifts. They had a claim for personal injury that was dismissed and not pursued further by them. A tort claim is not subject to assignment prior to judgment. Village of Ridgewood v. Shell Oil Co., 289 N.J. Super. 181, 195 (App. Div. 1996);

Di Tolvo v. Di Tolvo, 131 N.J. Super. 72, 79 (App. Div. 1974); Goldfarb v. Reicher, 112 N.J.L. 413, 414 (Sup. Ct.), aff'd o.b., 113 N.J.L. 399 (E. & A. 1934). In United States Casualty Co. v. Hyrne, 117 N.J.L. 547, 552 (E. & A. 1937), the Court stated: "It has always been held that the right to bring an action in the courts of this state is possessed by the injured person alone, unless the injured person assigns his right to someone else which cannot be done before judgment when the action sounds in tort . . . ." Accord Costanzo v. Costanzo, 248 N.J. Super. 116, 121-22 (Law Div. 1991).

Plaintiffs could have appealed from the summary judgment order, but their assignment of the right to appeal was ineffective. We address the appeal only to determine whether LFS could pursue its own claim for contribution from American Lifts under the Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-3.

### III.

The relevant provision of the Joint Tortfeasors Contribution Act states:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors . . . and any one of the joint tortfeasors pays such judgment in

whole or in part, he shall be entitled to recover contribution from the other . . . joint tortfeasors for the excess so paid over his pro rata share . . . .

[N.J.S.A. 2A:53A-3 (emphasis added).]

American Lifts relies on Polidori v. Kordys, Puzio & Di Tomasso, 217 N.J. Super. 424, 430-32 (App. Div. 1987), to argue that a stipulation of dismissal is not sufficient to satisfy the requirement of the statute that a "money judgment" be the basis for the contribution claim. In Young v. Steinberg, 100 N.J. Super. 507, 509-10 (App. Div. 1968), rev'd on dissenting opinion, 53 N.J. 252 (1969), the defendant settled with the plaintiff and then claimed a right to contribution from a joint tortfeasor. The Supreme Court held that a claim of contribution could be maintained if: (1) the "suit for contribution based on a settlement [had] been elevated to the status of a judgment by formal court proceeding," and (2) the settlement "discharges the injured party's claim against a non-settling joint tortfeasor." 53 N.J. at 255. The Court implicitly interpreted the "money judgment" language of the statute to include a confession of judgment by the settling defendant. Ibid.

Although plaintiffs in this case never obtained a "money judgment," LFS contends it is not precluded from pursuing its claim for contribution because its settlement with plaintiffs substantially satisfied the two requirements articulated in

Young, supra, 53 N.J. at 255. The settlement resulted from a conference before a Superior Court judge, thus invoking the court's participation and the approval of the settlement in judicial proceedings, and it disposed of plaintiffs' claims in their entirety against all potential tortfeasors. See Gangemi v. Nat'l Health Labs., Inc., 305 N.J. Super. 97, 105 (App. Div. 1997). American Lifts contends, however, that the stipulation of dismissal and release executed by plaintiffs did not discharge their claims against American Lifts, as later demonstrated by their attempt to assign those claims to LFS.

LFS is correct that a full-blown adversarial proceeding is not necessary to invoke the right of contribution under N.J.S.A. 2A:53A-3. Polidori, supra, 217 N.J. Super. at 431 (citing Young, supra, 53 N.J. at 255). But the statute does not apply to "contribution where the payment is made in fulfillment of a voluntary compromise or settlement of a claim for damages attributed to a joint tortfeasor." Ibid. (quoting Pa. Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 383 (1954)). Although a consent judgment satisfies the "judgment" requirement of the statute, Young, supra, 53 N.J. at 255, we declined in Polidori to expand the statute to apply as well to a stipulation of dismissal. Polidori, supra, 217 N.J. Super. at 432. We acknowledged there was "little philosophical difference between

a settlement coupled with a Stipulation of Dismissal and a settlement in the form of a consent judgment," but we also determined that the plain language used by the Legislature constrained us against expanding the contribution statute to include a stipulation of dismissal.  Ibid.

LFS also contends the stipulation of dismissal can be converted into a consent judgment if it is in the interests of justice to do so.  See Gangemi, supra, 305 N.J. Super. at 103. It asks us to take that course of action so that its right to appeal the summary judgment order is not extinguished. Otherwise, contends LFS, preventing it from pursuing its contribution claims would be against the interests of justice and would discourage settlements in future cases.

Here, unlike the alleged tortfeasor in Gangemi, American Lifts did not participate in the settlement conference.  It had no further involvement in the proceedings once it obtained summary judgment.  Also, the release executed by plaintiffs was only in favor of LFS and not also in favor of American Lifts.

The statutory requirement of a judgment is not against the interests of justice and should not discourage settlements.  A defendant is not required to pay another tortfeasor's share of the damages.  A defendant can proceed to trial on the plaintiffs' personal injury claims and receive a credit under

the Comparative Negligence Act, N.J.S.A. 2A:15-5.2, for any proportion of responsibility for the injuries that the jury attributes to another tortfeasor, even if the other tortfeasor was earlier dismissed from the case pursuant to the statute of repose. Town of Kearny v. Brandt, 214 N.J. 76, 98-104 (2013). Thus, the amount a defendant pays voluntarily to settle plaintiffs' claims need not cover the liability of a co-defendant who has been dismissed from the case. If a defendant nevertheless settles and pays more than its fair share for the injuries, it can preserve its claim for contribution from a potentially liable joint tortfeasor through appropriate judicial proceedings and a judgment order.

We are not convinced by the arguments of LFS that we should depart from our prior precedent and hold that contribution may be sought where the court has not entered a money judgment in favor of plaintiffs that fully resolves their claims against the alleged joint tortfeasor. See Young, supra, 53 N.J. at 255.

We also reject the argument of LFS that the trial court's summary judgment order in favor of American Lifts satisfies the "judgment" requirement of the contribution statute. The statute refers to "a money judgment" recovered by the person who suffered injury. Here, plaintiffs did not obtain a money judgment.

10

We conclude that LFS has no viable claim of contribution under <u>N.J.S.A.</u> 2A:53A-3 for its voluntary payment of settlement money to plaintiffs to obtain the stipulation of dismissal.

IV.

Because the judgment order from which LFS appeals was based on the statute of repose and because the parties have briefed the issue, we will also address that statute as an alternative ground for affirmance of summary judgment dismissing all claims against American Lifts.

In relevant part, the statute of repose states:

> No action, whether in contract, in tort, or otherwise, to recover damages for any deficiency in the <u>design</u>, planning, surveying, supervision or construction <u>of an improvement to real property</u>, . . . nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the <u>design</u>, planning, surveying, supervision of construction or construction <u>of such improvement to real property</u>, more than 10 years after the performance or furnishing of such services and construction.
>
> [<u>N.J.S.A.</u> 2A:14-1.1(a) (emphasis added).]

Here, American Lifts designed the torklift in the mid-1990s, and the device was installed in the Federal Express facility at Newark Airport in 1995. Plaintiffs' complaint against LFS was filed in February 2008, more than twelve years later, and LFS's third-party complaint and plaintiffs' amended

complaint against American Lifts were filed yet later, in 2009 and 2011 respectively.

LFS argues the torklift is not subject to the statute of repose because it is a product that was manufactured off-site and American Lifts had no role in the construction of the warehouse facility. LFS argues that only the statute of limitations, N.J.S.A. 2A:14-2, fixes the time period within which American Lifts could be sued for manufacturing a defectively-designed product, and that the statute of limitations runs from the time the claim accrued rather than from the time of design or installation of the product.

Because we address interpretation of a statute and the legal consequences that flow from that interpretation, our standard of review is plenary. McGovern v. Rutgers, the State Univ. of N.J., 211 N.J. 94, 107-08 (2012); In re Pet. for Ref. on Trenton Ord. 09-02, 201 N.J. 349, 358 (2010).

Initially, we reject LFS's argument that American Lifts waived a defense based on the statute of repose by arguing earlier in the litigation that the claims against it were untimely under the two-year statute of limitations. The statute of repose and the statute of limitations can both apply to determine whether a cause of action was timely filed. O'Connor v. Altus, 67 N.J. 106, 122-23 (1975); Cumberland Cnty. Bd. of

Chosen Freeholders v. Vitetta Grp. P.C., 431 N.J. Super. 596, 609 (App. Div.), certif. denied, 216 N.J. 430 (2013).

With respect to the statute of repose, the pertinent questions are whether the torklift was an improvement to real property and whether American Lifts was a designer of the improvement or only the manufacturer of a product used by others in the design, planning, and construction of an improvement to real property. LFS argues that the torklift was analogous to the piping material in State v. Perini Corp., 425 N.J. Super. 62, 80-81 (App. Div.), certif. granted, 211 N.J. 606 (2012), as to which we held the manufacturer could not invoke the statute of repose. LFS also argues that the torklift was similar to the defective crane in McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 169 (App. Div.), certif. denied, 108 N.J. 219 (1987), that was affixed to the industrial building but was determined to be "production machinery" outside the scope of the statute of repose. American Lifts responds that the torklift was a specially-designed, unique device that was permanently affixed to the Federal Express warehouse and constituted an improvement as to which its designer was entitled to repose more than ten years after the design work was completed.

A number of cases have held that defective materials and manufactured equipment installed permanently in a construction

project are improvements to property and that the designer, builder, or installation contractor of those materials and devices could not be sued more than ten years after completion of its work.  See Ebert v. S. Jersey Gas Co., 157 N.J. 135, 140 (1999) (underground natural gas lines were an improvement to real property); Diana v. Russo Dev. Corp., 352 N.J. Super. 146, 152-58 (App. Div. 2002) (permanently attached ladder providing access to roof was an improvement to property, although ladder could be purchased in the same form for other uses); Brown v. Jersey Cent. Power & Light Co., 163 N.J. Super. 179, 192, 195-96 (App. Div. 1978) (a free-standing electrical transfer switch was an improvement to real property), certif. denied, 79 N.J. 489 (1979); Luzzader v. Despatch Oven Co., 651 F. Supp. 239, 243-44 (W.D. Pa. 1986) (industrial oven in plant was an improvement to the property), rev'd in part on other grounds, 834 F.2d 355 (3d Cir. 1987), cert. denied sub nom. Honeywell, Inc. v. Luzadder, 485 U.S. 1035, 108 S. Ct. 1595, 99 L. Ed. 2d 909 (1988); Gnall v. Ill. Water Treatment Co., 640 F. Supp. 815, 817-18 (M.D. Pa. 1986) (water treatment system installed in plant was an improvement to real property).  But cf. Rolnick v. Gilson & Sons, Inc., 260 N.J. Super. 564, 567-68 (App. Div. 1992) (standard attic fan installed by seller of home was not covered by statute of repose as an improvement to real property).

Specifically, elevators have been held to be improvements to real property, both in our trial courts and in the courts of other jurisdictions. Santos v. Hubey Corp., 236 N.J. Super. 608, 611 (Law Div. 1989); Hall v. Luby Corp., 232 N.J. Super. 337, 351-52 (Law Div. 1989); see, e.g., Fritz v. Otis Elevator Co., 549 N.E.2d 205, 208 (Ohio Ct. App. 1988); Mitchell v. United Elevator Co., 434 A.2d 1243, 1249 (Pa. Super. 1981); Desnoyers v. R.I. Elevator Co., 571 A.2d 568, 570-71 (R.I. 1990).

In Dziewiecki v. Bakula, 180 N.J. 528, 532-33 (2004), however, the Court held that N.J.S.A. 2A:14-1.1(a) does not apply to a manufacturer of a standardized product used in construction. The statute protects "contractors, builders, planners, and designers." Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 116 (1996); Horosz v. Alps Estates, Inc., 136 N.J. 124, 128 (1994); Rosenberg v. Town of N. Bergen, 61 N.J. 190, 201 (1972). It does not protect manufacturers or sellers of standard materials used in construction. Diana, supra, 352 N.J. Super. at 151. The fact that the manufacturer "designed" a "standardized" product that was installed at a construction project does not constitute activity that is covered by the statute of repose. Dziewiecki, supra, 180 N.J.

at 532-33; Perini Corp., supra, 425 N.J. Super. at 80; Rolnick, supra, 260 N.J. Super. at 567-68.

In Perini Corp., supra, 425 N.J. Super. at 80-81, we held a defendant that had manufactured and supervised the installation of the pipes in an underground hot water heating system could not invoke the statute of repose with respect to its manufacturing role if the pipes were determined to be defective. We relied on Dziewiecki, supra, 180 N.J. at 533, in which the Supreme Court distinguished between manufacturers and distributors that sell, design, or manufacture standardized products and those that also install their standardized products according to specialized plans as part of an improvement to real property. See also Wayne Twp. Bd. of Educ. v. Strand Century, Inc., 172 N.J. Super. 296, 303 (App. Div. 1980) (statute of repose does not apply to designer/manufacturer of "a stock or shelf item out of its regular inventory" or to fabricator of building item designed by the project engineer), overruled in part on other grounds by Dziewiecki, supra, 180 N.J. at 533; Santos, supra, 236 N.J. Super. at 611-13 (disputed issues of fact as to the role of each defendant in designing, manufacturing, or installing elevator precluded summary judgment).

In _Dziewiecki_, _supra_, 180 _N.J._ at 533, the Court stated that, when a defendant wears "two hats," — namely, as both the manufacturer of a standardized product and its installer according to a specific design for the real property — and the injury is attributable to both functions, "the responsibility should be allocated between the two" roles.  Here, American Lifts did not install the torklift.  It only designed and fabricated the torklift, and all its work was done off-site.

Nevertheless, the torklift was not standard building material or a "stock or shelf" fabricated item.  It was specially designed and fabricated by American Lifts for the Federal Express facility.  We have not been directed to an authoritative case by either party that decides whether a direct role in installation is required to invoke the statute of repose for the designer of a specialty product that is a unique fixture and improvement to real property.

Considering the cases that have addressed the scope and reach of the statute of repose, we conclude that the statute applies to bar a claim after ten years if a defendant can show three things: (1) that the injury was caused by an "improvement to real property," _N.J.S.A._ 2A:14-1.1(a), (2) that the defendant "designed, planned . . . supervised, or constructed" the improvement, _ibid.,_ and (3) that the improvement was not a

standardized building product, e.g. Dziewiecki, supra, 180 N.J. at 532-33, but was specially-designed and fabricated to be an improvement to the real property.  We hold that the designer/ manufacturer need not also install such a product in order to invoke the statute of repose.

Here, application of the three listed elements to the evidence supports the trial court's conclusion that the claims against American Lifts were barred by the statute of repose.

An "improvement" is defined as a modification "to real property [that] permanently increases the property's value." Ebert, supra, 157 N.J. at 139 (citing 21 Am.Jur.2d, Improvements, § 1 (1968)); Black's Law Dictionary 773 (8th ed. 2004).  The factors considered when determining whether an item constitutes an improvement to real property include "whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property, and is permanent in nature."  Ebert, supra, 157 N.J. at 139 (quoting Van Den Hul v. Baltic Farmers Elevator Co., 716 F.2d 504, 508 (8th Cir. 1983)).

The torklift in this case facilitated movement of cargo containers and enhanced the functioning of the warehouse facility.  It was not merely a repair or replacement of an

existing feature of the property. It was designed to be installed as an integral feature of the property. Anchor bolts were used to affix the lift permanently in a concrete pit at the warehouse dock, where it was especially designed to fit. It was not merely "personal property" or "production machinery," as was the movable crane in McCalla, supra, 215 N.J. Super. at 169. It was intended to be a permanent fixture of the building. It was more like the electric transfer switch assembly in Brown, supra, 163 N.J. Super. at 198-99, which was "an integral part" of the building system and necessary for the proper functioning of the plant and, therefore, an improvement to real property.

With respect to the second element for application of the statute of repose, the court should "focus on the 'activities' of persons seeking [its] protection." Dziewiecki, supra, 180 N.J. at 533-34 (citing Dighton v. Fed. Pac. Elec. Co., 506 N.E.2d 509, 515 (Mass.), cert. denied sub nom. Fed. Pac. Elec. Co. v. Dighton, 484 U.S. 953, 108 S. Ct. 345, 98 L. Ed. 2d 371 (1987); McConnaughey v. Bldg. Components, Inc., 637 A.2d 1331, 1333 (Pa. 1994); Condit v. Lewis Refrigeration Co., 676 P.2d 466, 468 (Wash. 1984)). Here, American Lifts relies on its function in designing the torklift to the specifications of Federal Express for a particular building. LFS's expert alleged a design, not a manufacturing, defect in the can-stop mechanism.

However, a designer/manufacturer may not invoke the statute of repose if the article was merely designed as a standardized product, which happened to be installed in a construction project.  Dziewiecki, supra, 180 N.J. at 532-33; Perini Corp., supra, 425 N.J. Super. at 80.  The torklift in this case was not a standardized product designed and manufactured for sale to the public or other commercial customers.  Although LFS presented evidence that the torklift on which Cherilus was injured was not one-of-a-kind and that other ones were in use at this and other Federal Express facilities, there was no evidence that the particular design of this torklift was generally available to other industrial or commercial buyers.

American Lifts designed the torklift especially for the Federal Express facility and in accordance with the specifications and approval of Federal Express.  The lift had to conform to the floor-design of the Federal Express warehouse, which was comprised of evenly spaced ball bearings used to move cargo containers.  The lift's platform had to contain casters with the same uniform spacing to create a continuous surface on which containers could roll.  This ball bearing/caster floor and lift system was unique to the building, and perhaps several similar Federal Express facilities.  The lift also had to conform to the design of Federal Express trucks, which similarly

had floors on which heavy containers could be moved. The floor system was the feature that necessitated the can-stop mechanism on the lift that failed.

The number of such manufactured items may be a relevant factor but does not alone determine whether the product is a standardized, "off-the-shelf" product or designed uniquely for a particular construction project. Here, the specially-designed and affixed torklift was not available through any catalogue or product advertisement of American Lifts, and LFS did not have evidence of its sale or use in any facility except the facility at which Cherilus was injured and perhaps two other Federal Express facilities. There was vague testimony about the use of similar lifts at a Delta Airlines facility, but no evidence was produced demonstrating that the lift on which Cherilus was injured was a product manufactured generally for sale by American Lifts. The evidence supported the court's conclusion that it was a specially-designed improvement to the Federal Express facility. The role of American Lifts in that regard was similar to an engineer or architect who designed a unique component of a construction project, although the designing work was done off-site. Cf. Greczyn v. Colgate-Palmolive, 183 N.J. 5, 7-8 (2005) (statute of repose applicable to architectural designer of staircase on which the plaintiff tripped and fell).

The elements for application of the statute of repose have been read broadly to achieve a legislative preference "for finality in construction-related claims." Daidone v. Buterick Bulkheading, 191 N.J. 557, 567 (2007) (citing Rosenberg, supra, 61 N.J. at 199). We conclude the trial court correctly determined that the statute of repose applied to the torklift in this case and the role of American Lifts in designing it for the Federal Express facility.

V.

Having determined that the trial court properly dismissed the time-barred claims against American Lifts, we need not address additional grounds argued by American Lifts for summary judgment in its favor.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22

A-1285-12T2