**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2241-17T4
                A-2291-17T4

AII1, LLC, as assignee of
AUTOMOTIVE INNOVATIONS,
INCORPORATED,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

PINNACLE INSURANCE
SOLUTIONS, LLC, d/b/a
PINNACLE RISK SOLUTIONS,
also d/b/a PINNACLE COMPANIES,

      Defendant-Respondent/
      Cross-Appellant.

_____

> Argued May 1, 2019 – Decided July 15, 2019
>
> Before Judges Accurso, Vernoia and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7808-14.
>
> Thomas S. Howard argued the cause for appellant/ cross-respondent (Gartenberg Howard, LLP, attorneys;

Thomas S. Howard and Michael C. Hughes, on the briefs).

Diana C. Manning argued the cause for respondent/ cross-appellant (Bressler, Amery & Ross, PC, attorneys; Diana C. Manning and Benjamin J. DiLorenzo, on the briefs).

PER CURIAM

In July 2013, Automotive Innovations, Inc., (Automotive), suffered a fire at one of its locations and later discovered its insurance coverage was inadequate to cover its property losses and the losses from the interruption of its business. Eight months later, it executed an Assignment for Benefit of Creditors pursuant to N.J.S.A. 2A:19-1 to -50, assigning its assets to a trustee pursuant to a Chancery Division order. The court approved the sale and assignment of Automotive's assets to plaintiff AII1, LLC,[1] including an assignment of a "[p]otential [c]hose in [a]ction" against Automotive's insurance broker, defendant Pinnacle Insurance Solutions, LLC, "for underinsurance" in an "[u]ndetermined [a]mount."

---

[1] Plaintiff was formed by Automotive's president for the purpose of acquiring Automotive's business.

In November 2014, plaintiff, as Automotive's assignee, filed a complaint against defendant asserting two claims.[2] In the first count, plaintiff alleged defendant "fail[ed] to exercise the requisite skill or diligence to ascertain Automotive's coverage needs and/or to supply the coverage it undertook to supply[,] advise Automotive of the limitations in the [p]olicy[,] familiarize itself with the coverage . . . and to . . . advise Automotive of the risks associated with the coverage." Plaintiff asserted that "[d]efendant's omissions, neglect, and failure[s] constituted professional malpractice that breached the duty it owed to Automotive as its insurance broker by causing Automotive to have inadequate, insufficient, and unsuitable insurance for the fire loss it suffered." Plaintiff claimed that "[a]s a result of defendant's breach of duty, Automotive was uninsured" for losses for its inventory, business interruption and business personal property.

In the second count, plaintiff alleged defendant was liable for consequential damages, including the loss of good will, that Automotive sustained as a result of inadequate business interruption insurance. In its answer to the complaint, defendant generally denied the allegations.

---

[2] Plaintiff filed its original complaint and then a first amended complaint in November 2014. We summarize the allegations in the first amended complaint, which was the operative complaint during the litigation.

In May 2017, defendant filed a motion for partial summary judgment arguing there was insufficient evidence establishing that it breached any duty to plaintiff concerning the amount and adequacy of the business interruption insurance coverage. Defendant further asserted the second count did not assert a cognizable legal claim because it sought consequential damages based on defendant's alleged failure to obtain adequate business interruption insurance for Automotive, the proceeds of which would have funded Automotive's continued operations following the fire.

The court heard argument and, in a written decision, determined the second count did not assert a cognizable cause of action because in Rider v. Lynch, the Supreme Court held that "if [a] broker neglects to procure the coverage, or otherwise fails to act with proper skill and care, he becomes liable in damages not exceeding the amount of insurance he was employed to effect." 42 N.J. 465, 480 (1964). Thus, the court reasoned that plaintiff could properly claim damages limited only to the amount of the insurance defendant was tasked to obtain, and could not recover consequential damages for losses proximately

caused by the alleged inadequate business interruption insurance.[3]  The court entered an order granting defendant summary judgment on the second count.

The trial on the claim asserted in the first count was conducted over eight days.  At the conclusion of plaintiff's case, defendant moved for an involuntary dismissal, R. 4:37-2(b), and following the close of all of the evidence, defendant moved for entry of judgment in its favor, R. 4:40-1.  In both motions, defendant argued that plaintiff, as Automotive's assignee, could not prosecute Automotive's claims because tort claims may not be validly assigned prior to judgment.  The court reserved decisions on both motions[4] and, following the jury's verdict, entered an order denying the motions without making any findings of fact or conclusions of law.

The jury returned a verdict in plaintiff's favor.  Defendant moved for judgment notwithstanding the verdict, R. 4:40-2, arguing in part, again, that

---

[3]  The court did not address defendant's alternative argument supporting its summary judgment motion—that the undisputed facts established that defendant did not provide erroneous advice concerning the adequacy of the business interruption insurance required or provided under the policy.

[4]  We remind the court that "it is a better practice . . . to decide" a motion for an involuntary dismissal under Rule 4:37-2(b) "at the time it is made."  Verdicchio v. Ricca, 179 N.J. 1, 31 n.4 (2004).

Automotive could not properly assign tort claims against defendant to plaintiff prior to judgment and, as a result, plaintiff could not prosecute the tort claims as Automotive's assignee. The court entered an order denying defendant's motion, again without offering any findings of fact or conclusions of law supporting its decision.[5] The court also entered a final judgment stating the jury found "defendant breached the standard of care it owed as an insurance broker for Automotive" and "proximately caused damages to plaintiff in the amount of $500,000," and awarding damages in that amount to plaintiff.

In A-2241-17, plaintiff appealed from the court's order granting defendant summary judgment on the second count. In A-2291-17, defendant appealed

---

[5] We review a court's orders, and not its reasoning, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001), but that does not excuse the trial court's failure to make findings of fact and conclusions of law supporting its disposition of three separate dispositive motions in this matter. See R. 1:6-2(f). The making of such findings and conclusions is not only required, R. 1:6-2(f), it facilitates proper appellate review and supports confidence in the judiciary by providing the court's reasoning for its decisions that the parties deserve and are entitled to expect. Rather than remand for the court to provide the findings and conclusions supporting its disposition of the three motions at issue, and further delay the prompt disposition of this matter owed to the parties, we address the challenged court orders without the benefit of the court's reasoning because we conclude that the record supporting the disposition of the motions is undisputed and the issues presented are questions of law, which we decide de novo. See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

from the court's orders denying its motions for involuntary dismissal, for judgment following the presentation of the evidence and for judgment notwithstanding the verdict.[6] We consolidated the appeals. Based on our review of the record in light of the applicable law, we are convinced the court erred by denying defendant's motions for involuntary dismissal and for judgment following the presentation of the evidence because Automotive's assignment of its tort claims against defendant was invalid. We therefore reverse the court's orders denying those motions, as well as the order for the final judgment, and dismiss as moot plaintiff's appeal of the court's order granting defendant's summary judgment on count two.

Defendant moved for involuntary dismissal, R. 4:37-2(b), judgment following the presentation of the evidence, R. 4:40-1, and for judgment notwithstanding the jury's verdict, R. 4:40-2. Each of the motions was founded on the contention that plaintiff could not prosecute Automotive's claims against defendant because an assignment of tort claims prior to judgment is not permitted under N.J.S.A. 2A:25-1 and therefore is invalid. Plaintiff contends defendant waived the purported defense because it was not asserted in

---

[6] Plaintiff filed a cross-appeal in A-2291-17, and later requested that the cross-appeal be withdrawn. We granted the request in a February 6, 2018 order.

defendant's answer, during discovery or in any pretrial proceedings, and was raised for the first time in defendant's motion for an involuntary dismissal following the presentation of plaintiff's case.

When defendant moved for an involuntary dismissal, R. 4:37-2(b), plaintiff did not make the argument it makes here—that defendant waived the putative invalid assignment defense by failing to assert the defense in its answer or otherwise prior to the presentation of plaintiff's evidence. In fact, when defendant's counsel moved for an involuntary dismissal on that basis, plaintiff's counsel did not claim defendant waived the defense by failing to raise it earlier; instead, plaintiff's counsel's advised the court he "[was] prepared to respond" to defendant's argument. When defendant later moved for judgment following the presentation of all of the evidence, R. 4:40-1, plaintiff again did not argue defendant had waived the alleged defense. The record shows plaintiff waited until after the jury's verdict to assert for the first time, in its opposition to defendant's motion for judgment notwithstanding the verdict, R. 4:40-2, that defendant had waived its invalid assignment defense by not raising it earlier.

Defendant appeals from the court's denial of its motions for an involuntary dismissal and for judgment following the close of all of the evidence. With regard to the order denying those motions, we do not consider plaintiff's

argument that defendant waived the putative invalid assignment defense because the argument was not made before the motion court and we generally do not consider arguments raised for the first time on appeal unless they go to jurisdiction or involve matters of great public concern. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Thus, we first address defendant's argument that the court erred by denying its motions for an involuntary dismissal and for a judgment at the conclusion of the presentation of the evidence. As noted, defendant contends the motions should have been granted because the assignment of Automotive's claims to plaintiff is invalid. We consider the court's disposition of those motions on the records extant before the motion court when the motions were made. Lebron v. Sanchez, 407 N.J. Super. 204, 213 (App. Div. 2009) (explaining that we review a court's decision based solely on the motion record); see also Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000). As a result, we determine the validity of the court's order denying the motions without consideration of plaintiff's contention, which it did not raise before the court when the motions were argued, that defendant waived its right to challenge the validity of Automotive's assignment by failing to assert it prior to the close of plaintiff's case. Lebron, 407 N.J. Super. at 213.

In our review of orders on a defendant's motions for involuntary dismissal, R. 4:37-2(b), and for judgment at the close of all of the evidence, R. 4:40-1, we employ the same standard as the trial court. Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 455 (App. Div. 2012). We apply the following evidential standard: "[i]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him [or her] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied." Id. at 456 (quoting Verdicchio, 179 N.J. at 30).

Defendant argues the court erred by denying its motions because Automotive's assignment of the claims to plaintiff was invalid as a matter of law. Defendant relies on the well-settled principle that "[a] tort claim is not subject to assignment prior to judgment," Cherilus v. Fed. Express, 435 N.J. Super. 172, 178 (App. Div. 2014); see Di Tolvo v. Di Tolvo, 131 N.J. Super. 72, 79 (App. Div. 1974); see also Nationwide Mut. Ins. Co. v. Caris, 170 F. Supp. 3d 740, 747 (D.N.J. 2016), and claims plaintiff could not prosecute the claims asserted in the complaint because Automotive could not lawfully assign those claims to plaintiff.

We reject plaintiff's assertion that the prohibition against the assignment of tort claims prior to judgment is inapplicable here because the claims asserted against defendant were not tort claims, but were instead contract claims. The assignment of choses in action[7] sounding in contract is expressly authorized by N.J.S.A. 2A:25-1, which provides, in pertinent part, that "all choses in action arising on contract shall be assignable." The statute has been "broadly construed" to allow the assignment of choses in action based on contractual and quasi-contractual grounds. Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 582, 612 (App. Div. 2000). For example, in Kimball we determined that the plaintiff's indemnification claim had been properly assigned because "[i]ndemnity arises from contract, express or implied," id. at 613 (alteration in original) (quoting George M. Brewster & Son v. Catalytic Constr. Co., 17 N.J. 20, 28 (1954)), and the "foundation" of the plaintiff's claim was a contract to purchase a component part of the chair which caused plaintiff's assignor's injuries, ibid.

---

[7] "A chose in action is a personal right not reduced to possession but recoverable by a suit at law." In re Estate of Roche, 16 N.J. 579, 595 (1954); see also Black's Law Dictionary 294 (10th ed. 2014) (defining chose in action as "[a] proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort" and "[t]he right to bring an action to recover a debt, money, or thing.").

A-2241-17T4

Here, plaintiff's complaint does not assert that Automotive and defendant were parties to any contract, express or implied, or that defendant breached a contract. The complaint alleges causes of action founded exclusively on the claim that defendant committed professional malpractice by negligently advising Automotive about its insurance needs and coverage and failing to obtain appropriate and necessary coverage for Automotive. In addition, the jury was instructed by the court solely on principles of negligence pertinent to a professional malpractice claim, and returned a verdict in accordance with the court's instructions finding defendant was negligent by deviating from the standard of care expected of insurance brokers. To be sure, a malpractice claim against an insurance broker might support contract and tort claims, see Rider, 42 N.J. at 477 (explaining that an insurance broker "is liable in tort or for breach of contract" by failing to exercise reasonable care in procuring appropriate insurance coverage for a client), but plaintiff opted to assert only tort claims against defendant. Plaintiff alleged "[d]efendant's omissions, neglect, and failure constituted professional malpractice that breached the duty it owed to Automotive as its insurance broker," and the jury was neither requested to find nor found defendant breached any purported contract with Automotive; the jury was asked to determine, and only determine, that defendant was negligent.

12

N.J.S.A. 2A:25-1 provides no refuge supporting Automotive's assignment of the claims asserted in the complaint because they are not choses in action arising on a contract.

Plaintiff argues the prohibition against the assignment of tort claims prior to judgment is inapplicable because it is, or should be, limited to the assignment of tort claims involving personal injuries. We are not persuaded.

The prohibition against the assignment of tort claims prior to judgment is founded on the principle that "[e]xcept when otherwise provided by statute, nothing is assignable, either at law or in equity, that does not directly or indirectly involve a right to property." Goldfarb v. Reicher, 112 N.J.L. 413, 414 (Sup. Ct.), aff'd, 113 N.J.L. 399 (E. & A. 1934). Thus, a chose in action unrelated to a right involving property may only be assigned if authorized by statute. In Goldfarb, the Court explained that "[i]t is a firmly established rule that a right of action for personal injuries cannot be made the subject of assignment before judgment, in the absence of a statutory provision to the contrary." Ibid. Applying these principles in East Orange Lumber Co. v. Feiganspan, the court noted that "section 19 of the Practice Act" authorized the assignment of "all choses in action on contract" and held that the absence of any similar statutory authorization for the assignment of a negligence claim for

damage to personal business property "is sufficient to indicate that the Legislature did not mean that the same privilege should be had by the assignee of a chose in action arising out of tort." 120 N.J.L. 410, 412 (Sup. Ct.), aff'd, 124 N.J.L. 127 (E. & A. 1940).

N.J.S.A. 2A:25-1 permits the assignment of certain claims, but does not authorize the assignment of choses in action arising out of tort and plaintiff cites to no statute authorizing the assignment of tort claims prior to judgment. We recently reiterated that "[i]t has always been held that the right to bring an action in the courts of this state is possessed by the injured person alone, unless the injured person assigns his [or her] right to someone else which cannot be done before judgment when the action sounds in tort." Cherilus, 435 N.J. Super. at 178 (quoting U.S. Cas. Co. v. Hyrne, 117 N.J.L. 547, 552 (E. & A. 1937)). And the assignment of tort claims has uniformly been deemed invalid by courts applying New Jersey law. See Vill. of Ridgewood v. Shell Oil Co., 289 N.J. Super. 181, 195-96 (App. Div. 1996) (finding invalid an assignment of tort claims for property damages and clean-up costs); Di Tolvo, 131 N.J. Super. at 79 (finding invalid the assignment of tort claim for personal injuries); Berkowitz v. Haigood, 256 N.J. Super. 342, 346 (Law Div. 1992) (explaining a claim for personal injury damages arising in tort "is not assignable before judgment");

Costanzo v. Costanzo, 248 N.J. Super. 116, 121 (Law Div. 1991) (finding invalid the assignment of a tort claim for personal injuries); see also Caris, 170 F. Supp. 3d at 747 (finding under New Jersey law that a tort claim for negligence arising under an alleged failure to properly handle an insurance claim may not be assigned prior to judgment); Alcman Servs. Corp. v. Bullock, 925 F. Supp. 252, 258 (D.N.J. 1996) (finding legal malpractice claim a tort action that could not be assigned prior to judgment under New Jersey law); Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 867 (D.N.J. 1993) (finding that professional malpractice claims are choses in action arising out of tort and are therefore not assignable prior to judgment under New Jersey law).

Plaintiff contends we should ignore this well-settled principle because the prohibition should be limited only to tort claims involving personal injuries. In Kimball, we noted that "[t]he limitation of the non-assignability rule to personal injury claims is consistent with the rule in most other jurisdictions which still maintain some restrictions upon the assignability of claims," but we expressly found we had "no need to determine whether the prohibition against the assignment of tort claims is limited to personal injury claims, because" the plaintiff's claim was "contractual in nature." 334 N.J. Super. at 612 n.6.

We find no basis to depart from the longstanding application of the non-assignability rule to all tort claims. To be sure, the prohibition has been applied to the assignment of tort claims involving personal injuries. See, e.g., Cherilus, 435 N.J. Super. at 177 (applying prohibition against assignment of tort claims to personal injury claim); Di Tolvo, 131 N.J. Super. at 79. It has also been applied to tort claims that do not involve personal injuries. See Vill. of Ridgewood, 289 N.J. Super. at 195-96 (applying prohibition against assignment of tort claims to claim for property damage and clean-up costs); E. Orange Lumber Co., 120 N.J.L. at 413 (applying prohibition against assignment of tort claims to property damage claim and finding that the rule against the assignment of tort claims for damages to personal property is "firmly embedded in our jurisprudence"); see also Caris, 170 F. Supp. 3d at 747 (applying prohibition against assignment of tort claims to a claim for negligence in the handling of an insurance claim); Alcman Servs. Corp., 925 F. Supp. at 258 (applying prohibition against assignment of tort claims to a legal malpractice claim); Conopco, 826 F. Supp. at 867 (applying prohibition against assignment of tort claims to a professional malpractice claim). Plaintiff does not cite to any New

Jersey cases allowing the assignment of tort claims, whether they be with or without alleged personal injuries.[8]

Moreover, the prohibition against the assignment of tort claims is founded on the principles that actions should be brought only by the injured party and assignments of claims are barred unless expressly authorized by statute.[9] We

---

[8] In <u>Werrmann v. Aratusa, Ltd.</u>, we stated that the "plaintiff could have obtained an assignment" of a "broker[]-negligence claim . . . and pursued that claim as an assignee." 266 N.J. Super. 471, 476 (App. Div. 1993). We do not read this statement to allow or authorize the assignment of a tort claim because, as a matter of fact, there was no assignment of any claims in <u>Werrmann</u> and the validity of a non-existent assignment was not an issue. In <u>Werrmann</u>, we also determined that the putative assignee was a third-party beneficiary of a contract between the putative assignor and the broker. <u>Id.</u> at 476-78. As such, any assignment of the putative assignor's claims against the broker would have been choses in action arising in contract and therefore valid under N.J.S.A. 2A:25-1.

[9] Plaintiff argues the prohibition against the assignment of tort claims should be limited to personal injury actions because the prohibition is intended to "prevent unscrupulous strangers to an occurrence from preying on the deprived circumstances of an injured person," <u>Kimball</u>, 334 N.J. Super. at 611, (quoting <u>Caldwell v. Ogden Sea Transp., Inc.</u>, 618 F.2d 1037, 1048 (4th Cir. 1980)) and that principle has no application where, as here, Automotive and defendant engaged in a commercial transaction for the purchase of insurance. Plaintiff views the policies underpinning the prohibition too narrowly; there are other policy considerations supporting application of the prohibition in a commercial setting. For example, in <u>Alcman Services Corp.</u>, the court found that the assignment of a legal malpractice claim was invalid in part because the contrary conclusion "would lead to baseless and excessive legal malpractice claims and would undermine the personal confidence that must exist between lawyers and clients." 925 F. Supp. at 258. In other words, the court found there was a valid policy supporting the prohibition against the assignment of a tort claim that did not involve personal injuries. In any event, the weighing of the

presume the Legislature was fully aware of those principles when it adopted N.J.S.A. 2A:25-1,[10] see Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.– Liability Ins. Guar. Ass'n, 215 N.J. 522, 543 (2013) ("The Legislature is presumed to be aware of the decisional law of this State."), and the Legislature nonetheless elected to exclude choses in action in tort from those for which assignments are authorized. We cannot expand the statutory authority to assign claims beyond that expressly allowed by the Legislature. See DiNapoli v. Bd. of Educ. of Verona, 434 N.J. Super. 233, 238 (App. Div. 2014) ("Courts are not permitted to . . . 'presume that the Legislature intended something other than that expressed by way of the plain language.'" (quoting O'Connell v. State, 171

---

pertinent policies is for the Legislature and it has determined that tort claims are not included amongst those that may be assigned prior to judgment. If it were otherwise, N.J.S.A. 2A:25-1 would include choses in action arising in tort amongst those that may be assigned.

[10] New Jersey statutes have never authorized the assignment of choses in action arising in tort. An 1898 statute permitted the assignment of "choses in action arising on contracts" and other designated claims but did not authorize the assignment of tort claims. L. 1898, c. 228, § 38. The statute was modified in 1903, but did not authorize the assignment of tort claims. L. 1903, c. 247, §§ 19, 20. In 1937, the statute was codified with modifications not pertinent here in R.S. 2:41-1. L. 1937, c. 188. In 1951, the Legislature repealed and replaced Title 2 with Title 2A. L. 1951, c. 344. As part of that revision, N.J.S.A. 2A:25-1 replaced R.S. 2:41-1, see L. 1951, c. 344, § 3, but, as noted, N.J.S.A. 2A:25-1 does not authorize the assignment of choses in action arising in tort.

N.J. 484, 488 (2002))). As noted many years ago in response to a similar claim that the non-assignability rule should be limited only to certain tort claims,

> "[i]f the present case were one of novel impression in this jurisdiction, there would seem to be little reason for the present rule that an assignee of a chose in action for injury to personal property cannot sue thereon, but the rule being so firmly embedded in our jurisprudence it will be necessary for the [L]egislature, if it sees fit, to alter the same."

[E. Orange Lumber Co., 120 N.J.L. at 413.]

The assignment of the tort claims asserted in plaintiff's complaint against defendant was invalid. The court erred in finding otherwise in its denial of defendant's motions for involuntary dismissal and for judgment after the presentation of all of the evidence. We reverse the court's orders denying those motions, conclude the matter should not have been submitted to the jury for its determination, vacate the jury's verdict and reverse the court's order for final judgment. Because the court should have granted the motions for judgment in defendant's favor prior to submission of the matter for the jury's determination, we also reverse the court's order denying defendant's motion for judgment notwithstanding the verdict.[11] Our conclusion renders moot plaintiff's appeal of

---

[11] We do not address plaintiff's claim, raised for the first time in response to defendant's motion for judgment notwithstanding the verdict, R. 4:40-2, that

the court's order granting defendant partial summary judgment on the claim for consequential damages in count two, and we do not consider the merits of the claim.

In A-2291-17, reversed as to the court's orders denying defendant's motions for involuntary judgment, R. 4:37-2(b), for judgment following the presentation of the evidence, R. 4:40-1, and for judgment notwithstanding the verdict, R. 4:40-2, and the court's order for final judgment.

In A-2241-17, dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

defendant waived its right to challenge the validity of the assignment by making the challenge for the first time at trial. As noted, plaintiff did not make the waiver argument when defendant moved for an involuntary dismissal and for judgment following the presentation of the evidence, and those motions should have been granted based on the record and arguments before the court when they were made. Plaintiff's arguments concerning defendant's alleged waiver was made too late; it was first asserted following the court's erroneous denial of defendant's motions for an involuntary dismissal and for judgment after the presentation of the evidence.